**Leonard P. STUCKEY, Appellant,**

v.

**Caspar W. WEINBERGER,\* Secretary of Health, Education, and Welfare, Appellee.**

**No. 25487.**

United States Court of Appeals, Ninth Circuit.

Nov. 21, 1973.

---

\* Originally, the appellee was Elliot L. Richardson, then Secretary of Health, Education and Welfare. His successor has been substituted under the authority of Rule 43(c), Fed.R.App.P.

Leonard P. Stuckey in pro. per.

Sidney I. Lezak, U. S. Atty., Portland, Or., Alan S. Rosenthal, Atty. (argued), William D. Ruckelshaus, Asst. Atty. Gen., Civil Div., Dept. of Justice, Washington, D.C., for appellee.

Before CHAMBERS, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, and SNEED, Circuit Judges.

## OPINION

ELY, Circuit Judge (with whom CHAMBERS, KOELSCH, WRIGHT, TRASK, CHOY, GOODWIN and SNEED, JJ., concur):

Stuckey appeals from the District Court's dismissal, for lack of jurisdiction, of his complaint seeking review of an administrative determination denying reopening, in part, of his claims for disability insurance benefits. We affirm.

In 1954, Stuckey suffered a severe back injury. Shortly thereafter, in 1955, he filed a claim with the Social Security Administration ("SSA") for disability benefits. That claim was denied, both initially and upon reconsideration,[1]

---

1. The procedures followed by the SSA throughout this case are established in 42 U.S.C. § 405. In pertinent part, the section provides:

"(a) The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

"(b) The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Upon request by any such individual or upon request by a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, husband, widower, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any decision the Secretary has rendered, he shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision. Any such request with respect to such a decision must be filed within such period after such decision as may be prescribed in regulations of the Secretary, except that the period so prescribed may not be less than six months after notice of such decision is mailed to the individual making such request. The Secretary is further autho-

rized, on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter. In the course of any hearing, investigation, or other proceeding, he may administer oaths and affirmations, examine witnesses, and receive evidence. Evidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure.

\*     \*     \*     \*     \*

"(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a

because Stuckey failed sufficiently to demonstrate that he was disabled within the meaning of the Social Security Act.[2] The denial of benefits was reaffirmed after a hearing conducted at Stuckey's request. The SSA Appeals Council declined to review the decision of the hearing officer. Having exhausted his administrative remedies, Stuckey filed an action in the District Court. That court remanded to the SSA, upon the agency's request, for further consideration because Stuckey, after filing, entered a hospital for further treatment of his back. Upon remand, the SSA conducted a supplemental hearing at which Stuckey testified and was represented by counsel. On the expanded record, the prior denial of benefits was affirmed by both a hearing officer and the Appeals Council. Their decision was approved by the District Court when Stuckey renewed his court action.

■ In November, 1959, several months after the District Court's deci-

sion, Stuckey filed another claim for benefits. Two months after that, he filed a third. Both covered the same facts and were, in effect, identical to the first claim. Meeting a similar fate by the SSA,[3] they were denied, both initially and upon reconsideration. The denial was affirmed by a hearing officer, and his decision became final when the Appeals Council declined Stuckey's request for review. The hearing examiner based his decision upon findings that res judicata[4] precluded reconsideration of matters already decided by the District Court and that Stuckey's condition had not been materially changed since that decision was rendered.

In August, 1962, Stuckey filed yet another claim. This application, too, was denied initially and upon reconsideration. Local SSA officials declined to provide Stuckey the benefits he sought. The hearing examiner, reviewing the claim of Stuckey's request, affirmed the denial of benefits; he could find no jus-

---

claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a

judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.

"(h) The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter."

2. There was no question that Stuckey could not continue his work as a lumberjack. The SSA concluded, however, that he would be employable in other occupations because he possessed other useful skills.

3. At least at the hearing level, these two applications were apparently merged. The only distinction between them and the first claim was the period for which benefits were claimed. That distinction was, of course, irrelevant to the decisions on the merits.

4. Res judicata applies by virtue of 42 U.S.C. § 405(h) and 20 C.F.R. § 404.937.

tification for reopening the prior final decisions. After the Appeals Council declined to review the decision of the hearing officer, Stuckey sought judicial review. His suit was dismissed by the District Court.

Two more claims were filed in 1965. Both were denied by the SSA at the outset, and Stuckey did not seek review of those denials.

Finally, in 1966, Stuckey filed the application which, ultimately, led to this appeal. Like its numerous, virtually identical predecessors, this claim was denied in the first instance and, then, upon reconsideration. Stuckey then requested a hearing. At the hearing, the issue was different than it had been before. This time the question was whether Stuckey qualified for benefits under the terms of the Social Security Act as it had been amended in 1965. On the basis of the evidence adduced at the hearing,[5] Stuckey was found to be disabled and entitled to benefits. The amount awarded was, however, severly restricted by the hearing officer. He ruled that under the amended provisions of the act, benefits could be awarded only from September, 1965. Further, he ruled that Stuckey's claim for benefits under the pre-1965 law was foreclosed by application of the principle of res judicata. *See* 42 U.S.C. § 405(h); 20 C.F.R. § 404.937. Dissatisfied with that

limited victory, Stuckey sought review by the Appeals Council.

The Appeals Council modified the hearing officer's decision. It agreed that Stuckey was disabled and was entitled to benefits under the 1965 amendments, but it disagreed with the determination that Stuckey's pre-1965 claims could not be reopened. The Council applied an exception to the general policies of finality and res judicata (20 C.F.R. §§ 404.956–404.958).[6] Under that regulation, reopening was possible because Stuckey had presented "new and material evidence" within four years of the date when benefits were initially denied.[7] It therefore reopened those of Stuckey's prior applications which fell within the four-year period and granted Stuckey part of the benefits he sought. The other claims were deemed not subject to reopening.[8]

Stuckey, still unsatisfied, then filed his latest suit in the District Court. The court held (1) it had no jurisdiction to review the decision that several of Stuckey's claims would not be reopened, and (2) the decision of the Secretary was correct insofar as it allowed reopening and modified the disposition of the more recent claims. Stuckey appealed and now contends that all of his prior claims should have been reopened.[9]

At the threshold, we have the question of the correctness of the Dis-

---

5. There was newly proffered evidence that Stuckey had been suffering under a serious mental disability, continuously since 1954.

6. Section 404.957(b) provides that reopening is possible
   "within 4 years after the date of the notice of the initial determination . . . upon a finding of good cause for reopening such determination or decision . . .."
   Section 404.958 interprets "good cause" to mean where "new and material evidence is furnished after notice to the party to the initial determination . . . .."

7. The applicability of this regulation is questionable. Benefits were initially denied to Stuckey in 1954, much more than four years before the 1966 reopening. That apparently

allowed by the Appeals Council was reopening of the applications for reopening.

8. The effect of reopening these applications was to allow Stuckey benefits only from November, 1963. Prior to that date, disabled applicants were entitled to benefits only if they met a special earnings requirement. Subsequently, the law was amended to remove the restrictive requirement, but Congress provided that no benefits could be paid for periods prior to November, 1963, because of the statutory amendment. 78 Stat. 1075–76. Since Stuckey failed to fulfill the earnings requirement, the November, 1963 restriction applied to him.

9. He does not challenge the correctness of the modified decision regarding the payment of benefits on the claims filed between 1962 and 1966.

trict Court's determination that there is no jurisdiction to review the denial of reopening. The Social Security Act does allow judicial review in some situations. It is now settled, however, that the relevant section of the Act provides no basis for jurisdiction here. In a similar case, Filice v. Celebrezze, 319 F.2d 443 (9th Cir. 1963), we held:

"[T]he orders made judicially reviewable by Subsection (g) of Section 405 are orders authorized by Subsection (b) of Section 405 which make findings of fact and decisions as to rights of applicants for payment, or which affirm, modify, or reverse such orders, *and not orders which merely deny petitions to reopen proceedings in which such findings and decisions have been made.*" 319 F.2d at 445–446 (Emphasis added)

Stuckey does not challenge the correctness of the rule announced in *Filice.* Rather, he contends that there is another basis for jurisdiction. Citing Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966), he argues that decisions not to reopen are reviewable, for abuses of discretion, under the Administrative Procedure Act ("APA") (5 U.S.C. §§ 701–706). The APA authorizes judicial review of "final agency action for which there is no other adequate remedy in a court" (5 U.S.C. § 704) except

"to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

The *Cappadora* court determined that the Social Security Act neither precludes review nor wholly commits decisions regarding reopening to the discretion of the Secretary. Although we entertain immense respect for our Brothers of the Second Circuit, we can not fully accept their conclusions.[10]

In *Cappadora,* it was stated:

"[W]e do not believe that Congress would have wished to close the doors of the courts to a plaintiff whose claim for social security benefits was denied because of an unreasonable or inappropriate agency rule on reopening or because of a truly arbitrary administrative decision . . . . Absent any evidence to the contrary, Congress may rather be presumed to have intended that the courts should fulfill their traditional role of defining and maintaining the proper bounds of administrative discretion and safeguarding the rights of the individual."

356 F.2d at 6. While we basically agree with these quoted principles, we reject the broad scope of the *Cappadora* decision since we perceive, in the Social Security Act, convincing evidence that Congress did intend to bar judicial review of SSA decisions in certain cases. Section 405(h) of the Act provides in part that "the findings and decisions of the Secretary after a hearing shall be binding upon all . . . who were parties to such hearing." The obvious purpose of that language is to declare that res judicata principles are applicable to the findings and decisions of the SSA made in certain procedural contexts.[11] *See, e. g.,* Leviner v. Rich-

---

10. Although the *Cappadora* decision has previously received some attention from our court, we have never considered whether we should adopt the rule it suggests. In Kasparek v. Gardner, 409 F.2d 214 (9th Cir. 1969), we noted that the question of review under the APA was "open in this circuit." Subsequently, in Brockman v. Finch, 418 F. 2d 116 (9th Cir. 1969), we decided, based solely upon the concession of appellant's counsel, that review of a decision barring reopening was not available under the APA. The law in our court should not become established simply by reason of a party's con-

cession; hence, we cannot blindly apply our *Brockman* decision. Similarly, we cannot apply our recent decision in Harmon v. Finch, 460 F.2d 1229 (9th Cir. 1972), for the question of review under the APA does not appear to have been there presented.

11. As we interpret § 405(h), the "findings and decisions" to which res judicata applies are those, on the merits, which became *final* as a result of either judicial decision or a claimant's failure to seek review, outside the agency, after receiving notice of an adverse decision. This restrictive interpretation is

ardson, 443 F.2d 1338, 1342–1343 (4th Cir. 1971); III K. Davis, Administrative Law Treatise § 18.02 (1958 ed.; supp. 1971) [hereinafter· cited as Davis]. We have concluded that the Congress intended, by this distinction, to commit irrevocably to agency discretion those decisions which are rendered after full and fair agency hearings and to which, accordingly, the application of the traditional concept of res judicata could not be fairly seen as unreasonable. Thus committed, these decisions are beyond the jurisdiction of the courts under both the Act and the APA.

■ We attribute this effect to § 405(h) for two reasons. First, by its broad, unambiguous terms, finality is applicable, without reservation, to all procedurally correct decisions and findings of the Secretary. That, of course, cannot be interpreted literally. Even as to judicial decisions, the doctrine of finality does not have such a broad application, for there are clearly some of such decisions to which res judicata cannot be applied. *See* Davis § 18.03; 1 Moore's Federal Practice ¶ 0.405 [11] (1965). Nevertheless, within the limits of the res judicata doctrine, § 405(h) reflects the policy of strict finality. That Congressional policy is, we think, that, in the interests of administrative efficiency, every claimant seeking benefits under the Social Security Act should be given only one opportunity [12] to obtain the benefits accruing from an administrative system that guarantees a full panoply of procedural rights. *See* Hobby v. Hodges, 215 F.2d 754, 759 (10th

Cir. 1954). In light of the vast number of claims processed annually by the SSA, this limitation is wholly reasonable.[13] The administrative costs of the procedures specified in § 405 are undoubtedly great. · Each claimant is entitled to have his claim reviewed three and possibly four times before he may appeal to the courts. If every claimant were free to utilize those excellent procedures repeatedly to relitigate the same claim, the fiscal stability of the SSA could be dangerously undermined by such escalating burdens as would be necessarily consequential.

■ Secondly, if the barrier to relitigation in § 405 is to be effective, it must apply to judicial, as well as administrative, review. Otherwise, the courts would exercise review powers far beyond those anticipated in the statute. (*See* § 405(g); *see generally* Leviner v. Richardson, *supra.*) Claimants seeking to resurrect stale claims would turn to the courts for relief if it were, by law, unavailable from the SSA. That, in turn, would frustrate the expressed policy of finality. Persistent claimants could relitigate claims numerous times in hopes of securing a favorable decision, at great cost to both the SSA and the courts. *See* Hobby v. Hodges, *supra.* Each petition for review would necessarily involve the agency, and ultimately the courts, in a reexamination and reevaluation of the evidence previously adduced to support the original claim for benefits.[14] The restriction upon relitigation, prescribed in § 405, would evaporate. There is the consideration, too, that the jurisdiction

---

consistent with our interpretation of similar language found in other portions of § 405. *See* Filice v. Celebrezze, 319 F.2d 443 (9th Cir. 1963).

We need not now consider whether a broader scope should be given to § 405, as other Circuits have done. *See, e. g.,* Leviner v. Richardson, 443 F.2d 1338 (4th Cir. 1971). Due to Stuckey's perseverance, benefits to him were denied only after hearings were held to evaluate the merits of each claim.

12. The "single" opportunity involved includes numerous opportunities for a claimant to

seek review and thereby fully protect his interests in gaining a fair decision.

13. In fiscal 1971, the SSA received 5,062,932 applications for benefits; 45,697 appeal hearings were held; and more than 1,600 petitions for review were filed in the United States District Courts. Social Security Facts for Fiscal Year 1971. (S. S. A. Office of Administration Booklet).

14. This is necessarily true, for it is only in the context of the previous hearings and decisions that any accurate determination of the validity of a claim for reopening can be made.

of the federal courts is supposed, in general, to be conferred by Congress. In a situation wherein Congress has not clearly conferred jurisdiction in respect to a particular type of controversy, the courts should exercise a discreet restraint, especially in these times, in assuming it.

Given the effect of § 405, the critical issue becomes its scope: exactly which claims for review are beyond the courts' jurisdiction? The answer is derived from the res judicata doctrine, for its limits define the boundaries of the judicial power in cases like this. That doctrine is the vehicle Congress has employed to put some of the Secretary's decisions beyond review.

■ When applied to administrative decisions, the res judicata doctrine is not as rigid as it is with courts; there is much flexibility which is intended to adapt the doctrine to the unique problems of administrative justice. *See* III Davis § 18.03. Nevertheless, the doctrine retains full force when applied to adjudications of "past facts, where the second proceeding involves the same claim or the same transaction." *Id.* In those situations, the findings and decisions are res judicata and "the question whether the (tribunal making the decision is) an agency or a court is immaterial." *Id.* There is, therefore, no jurisdiction in the courts to review denials of reopening when the basis for the petition for reopening is an allegedly erroneous factual determination.[15] Reconsideration of those types of issues is barred by § 405, if the Secretary denies reopening.

■ The regulations which allow reopening in cases presenting issues unrelated to res judicata (e. g., 20 C.F.R. § 404.957(c)(8) allowing reopening to correct clerical errors) are a necessary aspect of the flexibility of the finality doctrine. *See* III Davis § 18.03 at 559–60 n.3 (1958 ed.). Since the issues

presented in cases arising under regulations of this kind are not factual ones, and thus are not subject to res judicata, such cases are subject to judicial review for the purpose of determining whether the SSA correctly applied the controlling regulation. In addition, of course, judicial review is available to determine the validity of the regulations themselves.

Regulations promulgated by the Secretary permit reopening in some circumstances, of prior, final factual determinations. *See, e. g.,* 20 C.F.R. § 404.-957(b), allowing reopening for "good cause" in certain cases. Such regulations may not be fully consistent with strict res judicata principles, but, as we view them, they represent permissible action taken by the Secretary to insure that the SSA shall operate fairly, according to claimants all procedural rights except such as would, in his expert opinion, unreasonably burden the SSA's operation. *See generally* III Davis § 18.03. They are *per se* reasonable under § 405(a). The Secretary also has discretion in the application of these regulations. If, after reviewing a petition for reopening which seeks redetermination of an issue subject to res judicata, he concludes, for example, that "good cause" was not shown therein, and he denies reopening, that denial is final. Since the Secretary need not ever grant reopening of claims subject to res judicata, whether he does so in any given case is entirely a matter of administrative grace.

We turn to consider the nature of the issues underlying Stuckey's petition for reopening. As we read the record, Stuckey advances two arguments. First, he argues that the determinations of nondisability made prior to 1966 were patently erroneous, and, hence, reopening is proper because of this "error on the face of the evidence." (20 C.F.R. §§ 404.957(c)(8), 404.958(c) ). This, he suggests, is proved by the SSA's finding of disability in 1966. Next, he contends

---

15. This includes two types of cases, (1) Those wherein no new evidence is presented and the error is asserted to be apparent on the record, and (2) those wherein "new and material" evidence is proffered.

that the decisions rendered prior to 1966 were wrong because there was inadequate evidence that he was in fact employable and, hence, not disabled.

Neither of Stuckey's arguments is persuasive. It is readily apparent that both relate to factual issues which, through res judicata, were conclusively determined long ago. Stuckey could have sought judicial review when the decisions he challenges were originally rendered. Since he failed to do so, the administrative decisions and the District Court decision became binding upon him. It would be wrong for the courts to intrude simply because the Secretary, exercising his discretion, chose not to relieve Stuckey of the latter's neglect.[16]

Affirmed.[17]

MERRILL, Circuit Judge (with whom BROWNING, DUNIWAY, HUFSTEDLER and WALLACE, JJ., concur) concurring:

I concur in the result. The reasons advanced by Judge Ely for according respect to earlier administrative determinations on the basis of administrative *res judicata* provide ample grounds for affirming on the merits the decision of the Secretary to deny reopening.

However, I agree with the Second Circuit, for the reasons set forth in Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966), that a limited area of judicial review has been afforded by the Administrative Procedure Act, and that the second sentence of 42 U.S.C. § 405(h) should not be construed to preclude judicial review; that that sentence "simply forbids attempts to review *final decisions on the merits* by any route other than that provided in § 405(g)." 356 F.2d at 5. (Emphasis supplied.) Proceeding to limited review of the Secretary's decision here, I would affirm that decision on the merits.

---

16. Even if the District Court had jurisdiction, it could have found no merit in Stuckey's arguments that the agency had abused its discretion.

17. There is a possibility that the District Court also lacked jurisdiction because of the absence of a requisite amount in controversy. We do not, however, reach that issue.