Arry ORTEGO, Plaintiff-Appellee,

v.

Caspar WEINBERGER, Secretary of
Health, Education and Welfare,
Defendant-Appellant.

No. 74–3048.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1975.

Rehearing Denied Sept. 26, 1975.

Donald E. Walter, U. S. Atty., Leven H. Harris, Asst. U. S. Atty., Shreveport, La., Robert E. Kopp, David M. Cohen, Barbara L. Herwig, Dept. of Justice, Appellate Sec., Civil Div., Washington, D. C., for defendant-appellant.

Preston N. Aucoin, Ville Platte, La., for plaintiff-appellee.

Before GEWIN, DYER and ADAMS *, Circuit Judges.

* Of the Third Circuit, sitting by designation.

GEWIN, Circuit Judge:

Following a 1961 automobile accident, Arry Ortego applied for disability benefits under the Social Security Act in 1963, 1967, 1971 and 1972. His first three applications were denied, and he sought no administrative review. Upon denial of his fourth application, Ortego sought the services of counsel and requested a hearing before an administrative law judge pursuant to 42 U.S.C. § 405(b). It was at the hearing that Ortego first presented physical and testimonial, as well as documentary, evidence to a quasi-judicial officer. The administrative law judge ruled that Ortego had been disabled (that is, unable to secure any substantial gainful employment) since his automobile accident in 1961. Acting pursuant to Social Security Administration regulations that allow reopening of applications for up to four years for "good cause" shown, 20 C.F.R. § 404.957(b), the administrative law judge held that Ortego was entitled to benefits under his 1972 and 1971 applications. The Appeals Council, and through it the Secretary of Health, Education and Welfare, affirmed his decision.

Dissatisfied with the four-year limitation on retroactive payments, Ortego sought review of the Secretary's determination in federal court. The district judge found that Ortego should have received benefits beginning twelve months prior to the 1963 application,[1] because there was error manifest "on the face of the evidence" before the administrative agency. In such circumstances, an application may be reopened at any time. 20 C.F.R. § 404.957(c); see Part II, infra.

The Secretary appeals from the district court's award of benefits for the preceding twelve years. Two essential questions are presented for our review: (1) whether a district court has jurisdiction to review the Secretary's refusal to reopen the 1963 and 1967 applications, and (2) whether the Secretary abused his discretion in reopening only under the 1971 application. We find that the district court had jurisdiction, but that it erred in overturning the Secretary's determination.

## I. Jurisdiction

As is often true, given the limited scope of federal judicial power, the jurisdictional issue demands our considered attention. We note, first, that four of the five Court of Appeals that have faced the question have held that federal courts have jurisdiction to review, for abuse of discretion, the Secretary's decision not to reopen prior applications. Ruiz-Olan v. Secretary of Health, Education and Welfare, 511 F.2d 1056 (1st Cir. 1975); Davis v. Richardson, 460 F.2d 772 (3d Cir. 1972); Maddox v. Richardson, 464 F.2d 617 (6th Cir. 1972); Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966). Only the Ninth Circuit has held that the Secretary's decision is a matter of unfettered discretion and therefore unreviewable. Stuckey v. Weinberger, 488 F.2d 904 (9th Cir. 1973).

All courts agree that the Social Security Act does not, by its terms, provide for judicial review of refusals to reopen. 42 U.S.C. § 405(g) provides for judicial review of any final decision of the Secretary made after a hearing if commenced within sixty days of notice of the decision. The act also contains a finality provision that makes the Secretary's determinations binding after a hearing, and unreviewable except as provided in the subchapter. 42 U.S.C. § 405(h). Under Section 405(b), however, the Administration must hold a hearing in only one circumstance: when an applicant has received an adverse *ex parte* determination and he makes a timely request for a hearing. 42 U.S.C. § 405(b).[2] The courts are agreed that

---

1. The Social Security regulations provide for retroactive payments of up to twelve months prior to the filing of an application if the claimant was under a disability when he applied. 20 C.F.R. § 404.607(b).

2. The pertinent statutes read, in full:

 Judicial review

 (g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the

the judicial review provision, 42 U.S.C. § 405(g), "was intended to apply to a final decision rendered after a hearing thus made mandatory, not to a decision which could lawfully have been made without any hearing at all . . .." Cappadora v. Celebrezze, *supra,* 356 F.2d

at 4. Hence, since Ortego did not apply for a hearing on his first three applications, the Secretary's refusal to reopen is not reviewable under § 405(g).

Undaunted by the Act's lack of specific authorization for judicial review of the

amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a

judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.

Finality of Secretary's decision

(h) The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

Administrative determination of entitlement to benefits; findings of fact; hearings; investigations

(b) The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Upon request by any such individual or upon request by a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, husband, widower, child, or parent who makes a showing in writing that his or her rights may be prejudiced by any decision the Secretary has rendered, he shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision. Any such request with respect to such a decision must be filed within such period after such decision as may be prescribed in regulations of the Secretary, except that the period so prescribed may not be less than six months after notice of such decision is mailed to the individual making such request. The Secretary is further authorized, on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter. In the course of any hearings, investigation, or other proceeding, he may administer oaths and affirmations, examine witnesses, and receive evidence. Evidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure.

Secretary's denial, the majority of courts have held that the Administrative Procedure Act, 5 U.S.C. § 701 et seq., provides the basis for review of a decision not to reopen. Ruiz-Olan v. Secretary of HEW, *supra;* Davis v. Richardson, *supra;* Maddox v. Richardson, *supra;* Cappadora v. Celebrezze, *supra. Cappadora,* a decision authored by Judge Friendly, is the seminal case in the area. The three other Courts of Appeal have cited it for a finding of jurisdiction. Relying upon various provisions of the APA indicating a generous posture towards judicial review, the Second Circuit found that federal courts have the power to scrutinize refusals to reopen for abuse of discretion.

Section 10(a) of the APA states that "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Section 10(e) requires reviewing courts to

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; 5 U.S.C. § 706.

Similarly, Section 10(c) reads:

> Agency action made reviewable by statute and final agency action for which there is no adequate remedy in a court are subject to judicial review. . . . 5 U.S.C. § 704.

Only the introductory clause of Section 10 places any limitations on the right to judicial review:

> (a) This chapter applies, according to the provisions thereof, except to the extent that—
>
> (1) statutes preclude judicial review; or
>
> (2) agency action is committed to agency discretion by law. 5 U.S.C. § 701.

As mentioned above, the finality provision of the Social Security Act, 42 U.S.C. § 405(h), does not preclude judicial review in the present case, because it applies only in situations where the aggrieved applicant has timely requested a hearing. A statute must demonstrate clear and convincing evidence of an intent to preclude judicial review before courts will cut off an aggrieved party's right to be heard. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Littell v. Morton, 445 F.2d 1207 (4th Cir. 1971); Fekete v. U. S. Steel Corp., 424 F.2d 331 (3d Cir. 1970). Where an act provides procedures for judicial review, a court cannot review an agency decision by any other means; where the act does not provide such procedures, however, "nonstatutory" review is still available. Aquavella v. Richardson, 437 F.2d 397 (2d Cir. 1971).

Nor do we agree with the Ninth Circuit, Stuckey v. Weinberger, *supra,* that the Secretary's refusal to reopen is irretrievably committed to his discretion.[3] When the introductory clauses and Section 10(e) are read together, we believe that the APA envisions limited review by the judiciary to ensure that administrators do not abuse the discretion granted them by Congress. *Accord,* L. Jaffe, Judicial Control of Administrative Action 374 (1965); *cf.* Littell v. Morton, *supra;* Manges v. Camp, 474 F.2d 97 (5th Cir. 1973).

Having eliminated the exceptions to the presumption of reviewability contained in the APA, and armed with the strong indicators embodied in Sections 10(a), (c) and (e) that aggrieved persons have a right to review of agency action, it would seem a simple matter to hold that the APA supplies the groundwork for review of the Secretary's refusal to reopen. Our only concern is that the

---

**3.** It should be noted that our case differs significantly from the fact situation presented in *Stuckey.* There the Ninth Circuit was careful to explain that the applicant had enjoyed a full-fledged evidentiary hearing on a prior request for benefits, so application of *res judicata* principles was reasonable. 488 F.2d at 910. Here Ortego never had a hearing on any of his prior applications. Hence, it could be argued that the result we reach in the instant case, *infra,* does not clash with the *Stuckey* decision.

decisions of the First, Second, Third, and Sixth Circuits rest on the assumption that Section 10 of the APA is an independent grant of federal jurisdiction. Since Section 405(g) of the Social Security Act does not provide federal courts with jurisdiction to review refusals to reopen, prior courts that have considered the question have relied, albeit inexplicitly, on the APA as a jurisdictional wedge.

The Second Circuit has admitted as much. In Toilet Goods Assoc. v. Gardner, 360 F.2d 677, 679 n. 1 (2d Cir. 1966), aff'd 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) the court acknowledged that in *Cappadora* it allowed Section 10 of the APA to operate as an independent jurisdictional grant, despite a prior holding that Section 10 was remedial. Ove Gustavsson Contracting Co. v. Floete, 278 F.2d 912 (2d Cir.), *cert. denied* 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960). In Aquavella v. Richardson, 437 F.2d 397, 400 nn. 9, 10 (2d Cir. 1971), on the question whether the district court had jurisdiction to review the Secretary's decision to suspend payments to a Medicare Act provider, the court was careful to note that jurisdiction was proper under 28 U.S.C. § 1331, so decision as to whether the APA served to grant jurisdiction was unnecessary. Finally, in Aguayo v. Richardson, 473 F.2d 1090, 1101–2 (2d Cir. 1973), Judge Friendly summarized the present state of the law:

> We are also unwilling to follow the district court in avoiding the jurisdictional amount problem with respect to the statutory claims by reliance on § 10 of the Administrative Procedure Act, 5 U.S.C. § 702, as an independent grant of jurisdiction. The Supreme Court has not squarely faced this recurring problem. Professor Davis, Administrative Law Treatise, § 23.02 (Supp.1970), cites Rusk v. Cort, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962) and Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), as having settled that § 10 of the APA constituted an affirmative grant, and

it is indeed hard to see how else jurisdiction could have existed. However, neither opinion adverted to the issue, and it is impossible to believe the Court would have disposed of so important an issue *sub silentio.*

\* \* \* \* \* \*

Our own decisions are similarly inconclusive. While Cappadora v. Celebrezze, 356 F.2d 1, 5–6 (2 Cir. 1966), assumed that § 10 of the APA was a jurisdictional grant, Wolff v. Selective Service, 372 F.2d 817, 826 (2d Cir. 1967), indicated that jurisdictional amount must be met in an action against federal officers. In Mills v. Richardson, 464 F.2d 995, 1001 n. 9 (2 Cir. 1972), we said that the question whether the APA was an independent jurisdictional grant had not been determined in this circuit. The problem is not an easy one, and decision will be rendered unnecessary if Congress should accept the sound recommendation of the Administrative Conference . . . that jurisdictional amount has no place in actions against federal officers.

Thus, the Second Circuit has apparently retreated somewhat from its *Cappadora* position that the APA grants jurisdiction.

 As a preface to our later discussion, it is clear that the district court had no alternative basis on which to ground jurisdiction of Ortego's case. If another statutory avenue existed, it would be unnecessary to decide whether Section 10 of the APA is an independent jurisdictional grant. 28 U.S.C. § 1331, the general federal question statute, however, requires $10,000 in controversy. Ortego did not plead or prove any sum approaching the necessary amount. Nor can we predicate jurisdiction on 28 U.S.C. § 1337, because the Social Security Act is not an "act regulating commerce." Rather, the constitutional artery for passage of the bill lay in Article 1, Section 8, Congress' power to lay and collect taxes. Charles C. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct.

883, 81 L.Ed. 1279 (1937); Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937). Finally, the federal mandamus provision, 28 U.S.C. § 1361, offers no foundation, because the Secretary's refusal to reopen was a matter of discretion rather than a ministerial act. *See* National Treasury Employees Union v. Nixon, 160 U.S.App.D.C. 321, 492 F.2d 587 (1974); United States v. Walker, 409 F.2d 477 (9th Cir. 1969); Bass Angler Sportsman Society v. U. S. Steel Corp., 324 F.Supp. 412 (M.D.Ala.), *aff'd* 447 F.2d 1304 (5th Cir. 1971).[4]

The dilemma faced by the Second Circuit in *Aquayo* typifies the uncertain state of the law throughout the rest of the country. Three appellate courts that have utilized Section 10 as a basis for review of refusals to reopen in social security cases have explicitly stated, in other contexts, that the APA is not an independent grant of jurisdiction. *Compare* Cappadora v. Celebrezze, *supra,* *with* Ove Gustavsson v. Floete, *supra* ; Davis v. Richardson, *supra; with* Zimmerman v. United States, 422 F.2d 326 (3d Cir. 1970); Maddox v. Richardson, *supra, with* Bramblett v. Desobry, 490 F.2d 405 (6th Cir. 1974). Courts base their negative jurisdictional reading of Section 10 on the belief that the APA is purely remedial, providing only the manner and procedures for judicial review of agency action without conferring jurisdiction. *See* Arizona Department of Public Welfare v. HEW, 449 F.2d 456 (9th Cir. 1971); Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, 370 F.2d 529 (8th Cir. 1967). Yet the fact remains that in the overwhelming majority of cases, courts have been willing to assume that the APA provides jurisdiction for review of refusals to reopen prior social security applications. Even in Stuckey v. Weinberger, *supra,* the only appellate decision contrary to the majority, the Ninth Circuit did not eschew Section 10 as a jurisdictional key-

stone, but based its analysis on the introductory clause of the provision—to the effect that a refusal to reopen is irretrievably committed to agency discretion. 488 F.2d at 910. Hence, social security cases allowing review of refusals to reopen might be viewed as unexplained exceptions to the general rule that the APA does not confer jurisdiction.

Yet even outside the social security arena the cases are in conflict. District courts are approximately equally divided on whether the APA is an independent jurisdictional grant. *Compare* Lyons v. Weinberger, 376 F.Supp. 248 (S.D.N.Y. 1974); Davis v. Romney, 355 F.Supp. 29 (E.D.Pa.1973); Burge v. Richardson, 321 F.Supp. 646 (N.D.Ga.1971); School Board of Okaloosa County v. Richardson, 332 F.Supp. 1263 (N.D.Fla.1971) [recognizing APA as an independent basis for jurisdiction] *with* Yahr v. Resor, 339 F.Supp. 964 (E.D.N.C.1972); CCCO—Western Region v. Fellows, 359 F.Supp. 644 (N.D. Cal.1972); Olin Industries v. NLRB, 72 F.Supp. 225 (D.Mass.1947) [holding APA does not ·confer jurisdiction]. The Fourth Circuit has twice assumed that Section 10 is a source of jurisdiction for review of agency action. Littell v. Morton, 445 F.2d 1207 (4th Cir. 1971) (APA provides limited review of Secretary of Interior's decision whether to allow attorneys' fees to ex-counsel for Navahos); McEachern v. United States, 321 F.2d 31 (4th Cir. 1961) (APA serves as basis for review of Social Security Administration's removal of hearing officer). The Court of Claims, too, has recognized the APA as a basis of jurisdiction when a federal statute does not expressly provide or preclude judicial review. Moore-McCormack Lines, Inc. v. United States, 413 F.2d 568, 188 Ct.Cl. 644 (1969). Yet the Ninth and District of Columbia Circuits have strenuously asserted that Section 10 does not confer any additional jurisdiction upon a federal court not ex-

---

4. In addition, the Supreme Court has recently held that § 1331 *et seq.* cannot provide jurisdiction for suits to recover Social Security benefits. 42 U.S.C. § 405(h); *Weinberger v. Salfi,* —— U.S. ——, 95 S.Ct. 2457, 45

L.Ed.2d 522 (1975). The court gave no consideration to review of "final agency action" pursuant to the terms of Section 10 of the Administrative Procedure Act.

pressly authorized by a separate statutory grant of power. Arizona Department of Public Welfare v. HEW, *supra*; Wisconsin v. FPC, 110 U.S.App.D.C. 260, 292 F.2d 753 (1961); *but see* Sikora v. Brenner, 126 U.S.App.D.C. 357, 379 F.2d 134 (1967) (utilizing APA as jurisdictional basis for review. of Patent Office determination).

Suffice it to say that our own decisions are similarly vacillatory. Two early cases denied judicial review pursuant to the APA. In City of Dallas v. Rentzel, 172 F.2d 122 (5th Cir. 1949), this court held it lacked jurisdiction to review an order of the Administrator of the Civil Aeronautics Board because neither the Federal Airport Act nor the APA conferred jurisdiction on an *appellate* court. In Magnolia Petroleum Co. v. FPC, 236 F.2d 785 (5th Cir. 1956) we held that the Natural Gas Act precluded judicial review under the APA. Neither decision expressly held that Section 10 was a purely remedial provision without jurisdictional effect. Three later decisions of this court have assumed that the APA is a jurisdictional source for review of agency action. In Freeman v. Brown, 342 F.2d 205 (5th Cir. 1965), farmers wished to challenge the Secretary of Agriculture's classification of tobacco types. The Secretary argued the Agricultural Adjustment Act's review provisions, which did not provide for judicial scrutiny of such decisions, were exclusive. This court, however, speaking through Judge Bell, found that the Secretary's decision was final agency action for which there was no other adequate remedy in any court, and allowed the suit to be brought "under" the APA. Similarly, in allowing a non-resident alien not physically present in the United States to challenge an order refusing him re-entrance, we stated:

> The emphasis [of § 10(a)] is on the breadth of coverage; there is judicial review unless a pertinent statute precludes it or the action questioned is a matter of agency discretion.

> \* \* \* \* \* \*

Thus, notwithstanding the absence of any express statutory authority for judicial review of the deportation statute, the Supreme Court has held that the Administrative Procedure Act allows judicial review of deportation orders. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868.

\* \* \* \* \* \*

A court of law is the proper place to test 'unauthorized administrative power.' Under Section 10(a) of the Act Estrada is entitled to a judicial test of the administrative action by which he is 'affected or aggrieved.' He is entitled to a determination of his status, and under Section 10(e) he may 'compel agency action unlawfully withheld.' Estrada v. Ahrens, 296 F.2d 690, 694-95 (5th Cir. 1961) (Wisdom, J.).

When an architect who had been discharged from the Army and Air Force Exchange Service sought review of his dismissal, he alleged jurisdiction pursuant to the Tucker Act, the Federal Tort Claims Act, the Veterans' Preference Act, and the Administrative Procedure Act. Young v. United States, 498 F.2d 1211 (5th Cir. 1974). Eschewing all other proffered grounds, we based jurisdiction solely on the APA, 5 U.S.C. § 701 et seq. Thus, despite our earlier equivocation, the most recent decisions of this court lend strong support to the view that the APA confers jurisdiction on federal courts to review agency action.

The Supreme Court, as noted by Judge Friendly in Aguayo v. Richardson, *supra*, has never squarely faced the issue. In Rusk v. Cort, 369 U.S. 367, 375, 82 S.Ct. 787, 792, 7 L.Ed.2d 809, 814 (1962), the question was "whether, despite the liberal provisions of the Administrative Procedure Act, Congress intended that a native of this country living abroad must travel thousands of miles, be arrested, and go to jail in order to attack an administrative finding that he is not a citizen of the United States." The Court found that the review provisions of the

Immigration and Nationality Act of 1952 were not exclusive and that the APA provided the basis for the district court's jurisdiction.[5] Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) was predicated on similar reasoning. The Court employed differing provisions of the APA both as a means of exerting jurisdiction over agency action and as an exposition of appropriate standards of review. 5 U.S.C. §§ 701, 706. Under the Department of Transportation Act of 1966 and the Federal-Aid Highway Act of 1968 the Secretary of Transportation was prohibited from authorizing federal funds for the construction of highways through park lands if a "feasible and prudent" alternative route existed. Petitioners maintained that the Secretary had not properly performed his duties in approving construction through Overton Park. The Supreme Court agreed. Though neither federal statute explicitly provided for review of the Secretary's decision, the Court experienced little difficulty in disposing of the jurisdictional issue:

> A threshold question—whether petitioners are entitled to any judicial review—is easily answered. Section 701 of the Administrative Procedure Act, 5 U.S.C. § 701 (1964 ed. Supp. V), provides that the action of 'each authority of the Government of the United States,' which includes the Department of Transportation, is subject to judicial review except where there is a statutory prohibition on review or where 'agency action is committed to agency discretion by law.' *Id.* at 410, 91 S.Ct. at 820, 28 L.Ed.2d at 149.

Upon deciding that neither exception precluded judicial review of the Secretary's authorization, the court continued its analysis by reliance upon a subsequent provision of Section 10:

> But the existence of judicial review is only a start: the standard for review must also be determined. For that we must look to § 706 of the Administrative Procedure Act, 5 U.S.C. § 706 . . . . *Id.* at 413, 91 S.Ct. at 822, 28 L.Ed.2d at 151.

Thus, although the Court might have availed itself of 28 U.S.C. § 1337 (acts regulating commerce) as the jurisdictional cornerstone, it did not. Instead it relied exclusively on Section 10 of the APA, thereby indicating that the Act serves both jurisdictional and remedial functions.[6]

We have presented this inconclusive, perhaps irreconcilable, inventory of cases in an effort, not to confuse, but to demonstrate the considerable problems a court faces when it must decide whether the APA constitutes an independent jurisdictional grant. We have also examined the legislative history of the Act and scholarly opinion surrounding its provisions to resolve the conundrum.

The history of legislative proceedings, while failing to provide a conclusive answer to the jurisdictional question, certainly manifests a desire to provide citizens with hitherto unknown relief against unauthorized administrative action. The House Report states that Section 10 "sets forth a simplified statement of judicial review designed to afford a remedy for every legal wrong." H.R. Rep.No.1980, 79th Cong., 2d Sess., U.S. Code Cong.Serv.1946, p. 1205 (1946). According to the sponsor of the legislation and the Senate Judiciary Committee, one reason for the bill was to afford review in cases where the relevant federal stat-

---

**5.** At the very least, the majority opinion *assumed* Section 10 was jurisdictional; though Justice Brennan's concurrence specifically denominated the APA as a "general grant of jurisdiction." 369 U.S. at 380, 82 S.Ct. at 795, 7 L.Ed.2d at 817.

**6.** The most recent pronouncement of the Supreme Court in the administrative law area, Dunlop v. Bachowski, —— U.S. ——, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), provides no defin-

itive answer to our quandary. In a suit involving the Secretary of Labor's refusal to instigate a civil action to set aside union elections under the Labor-Management Reporting and Disclosure Act, the Court simply stated, "We agree that 28 U.S.C. § 1337 confers jurisdiction upon the District Court to entertain respondent's suit . . . ," *Id.* at ——, 95 S.Ct. at 1857—without deciding whether the APA would supply jurisdiction independently.

utes do not provide for it, i. e. where the statutory remedy is not an adequate substitute or does not cover the particular situation involved. Staff of Senate Comm. on the Judiciary, 79th Cong., 1st Sess., Report on Administrative Procedure Act (Comm.Print 1945): Legislative History of the Administrative Procedure Act 37, 311 (1946). Congress was careful to point out that in order for agency action to evade review, legislative intent to forbid judicial scrutiny must be clear and convincing. Legislative History of the Administrative Procedure Act, *supra* at 275, 368 (1946). The Senate Report on the bill even speaks of "conferring a right" of review upon any person adversely affected by agency action. *Id.* at 212. Hence, it is clear beyond cavil that Congress envisioned a new era of administrative accountability when it passed the APA. The statute was designed to have broad application and flexible, expanded remedies. Persons desirous of challenging arguably arbitrary or illegal agency action were given an avenue for redress.

Yet it is also reasonably clear that lawmakers did not explicitly address the question of how courts would acquire jurisdiction over such attacks on agency determinations. Congress may have assumed that statutes governing particular agencies would supply the necessary jurisdictional entryway, or that broader statutes such as 28 U.S.C. §§ 1331, 1337 and 1361 would confer jurisdiction, or that Section 10 of the APA would serve as an independent jurisdictional grant. From the recorded legislative history itself, however, the problem of initial federal jurisdiction appears not to have occurred to the draftsmen. *Accord,* Byse and Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 328 (1967) (hereinafter Byse and Fiocca).

Commentators are generally agreed that the APA *should* be viewed as an independent jurisdictional grant. Professor Davis believes that Section 10's language "entitling" an aggrieved person to review should suffice to confer jurisdiction on federal courts. He poses Section 10 of the APA in contradistinction to 28 U.S.C. § 1331, stating that Section 1331, with its requisite jurisdictional amount, applies to federal question cases generally, while Section 10 applies to cases involving agency action. K. Davis, Administrative Law Treatise § 23.02 (Supp.1970). Professor Jaffe recommends more tentatively ". . . it would seem sound to treat § 10 as a source of jurisdiction with respect to any of the questions which that section makes reviewable. . . ." L. Jaffe, Judicial Control of Administrative Action 165 (1965). Following a review of the text, legislative history, and judicial interpretations of the Act, Professor Byse candidly admits that no definitive answer has been given to the question whether Section 10 is jurisdictional or simply remedial. Yet he concludes the Supreme Court ought to treat Section 10 as a grant of jurisdiction in order to obviate the problem of amount in controversy, without subjecting any additional agency action to judicial review. Byse and Fiocca, *supra* at 330.

■■■■ In the final analysis, then, Ortego presents us with a rather clear "right" to judicial review without a correspondingly clear entrance to the federal courthouse. The legislative history of Section 10 does not speak directly to the jurisdictional issue; courts have split on the broad question whether Section 10 is an independent grant; and commentators can only give their considered opinions, without firm Supreme Court support, that the APA confers jurisdiction. Viewing the terrain more narrowly, however, a clear majority of courts have held that aggrieved applicants can bring actions challenging refusals to reopen under Section 10 of the Administrative Procedure Act, perhaps realizing that, without such an avenue, complainants would be left without a practicable means of enforcing their rights against federal agencies. Congress intended for citizens to be able to obtain review of

agency action even when statutes do not clearly so provide, and courts should be attuned to such legislative desires. "[F]inal agency action for which there is no adequate remedy in a court [is] subject to judicial review. . . ." 5 U.S.C. § 704. As noted previously, our prior decisions have utilized the APA as a jurisdictional wedge when arguably arbitrary administrative action would otherwise go unremedied. In addition, aggrieved parties should have an expert forum to adjudge their claims. For federal courts have greater experience in federal administrative law than state courts, and problems of venue and in personam jurisdiction could present impediments to redress in state court. Though we have discussed the arguments *pro* and *con,* we ultimately side with the majority of courts that have allowed review of refusals to reopen prior social security applications pursuant to Section 10 of the APA. The district court had jurisdiction to hear Ortego's case.

## II. Merits

The Secretary's refusal to reopen Ortego's first two applications is reviewable for abuse of discretion. *Ruiz-Olan v. Secretary of HEW, supra*; *Davis v. Richardson, supra*; *Maddox v. Richardson, supra*; *Cappadora v. Celebrezze, supra*; *Langford v. Fleming,* 276 F.2d 215 (5th Cir. 1960). The district court, however, did not view the case from such a posture, but examined all the evidence as if it were deciding the litigation *de novo.* Such a stance was incorrect and, we believe, led to an erroneous result.

The social security regulations pertinent to reopening prior decisions are found in 20 C.F.R. § 404.957:

An initial, revised, or reconsidered determination of the Administration or a decision or revised decision of a hearing examiner or of the Appeals Council which is otherwise final . . . may be reopened:

(b) . . . within 4 years after the date of the notice of initial determination . . . to the party to such determination, upon a finding of good cause for reopening such determination or decision, or

(c) at any time when:

\* \* \* \* \* \*

(8) such initial, revised, or reconsidered determination or decision or revised decision is unfavorable, in whole or in part, to the party thereto but only for the purpose of correcting clerical error or error on the face of the evidence on which such determination was based.

A definition of "good cause" is contained in the following regulation:

"Good cause" shall be deemed to exist where: (a) New and material evidence is furnished after notice to the party to the initial determination; (b) A clerical error has been made in the computation or recomputation of benefits; (c) There is an error as to such determination or decision on the face of the evidence on which such determination or decision is based. 20 C.F.R. § 404.958.

"Error on the face of the evidence" is defined in the Social Security Claims Manual § 7015 (May 1970):

. . . An error on the face of the evidence exists where, on the basis of all the evidence in the file on which the determination or decision was based and any evidence of record anywhere in the Administration at the time such decision or determination was made, it is *clear* that the determination or decision was incorrect.

\* \* \* \* \* \*

A determination or decision which was reasonable on the basis of the evidence in the file and the statute, regulations, instructions, precedents, etc., existing at the time the determination or decision was made, will not be reopened merely because there is a shift in the weight of the evidence, a different inference is now drawn from the evidence, a different rule of law would now be applied, or the statute or regulations have been amended, unless

such amendment specifically provides otherwise. . . . In such cases, there is no error on the face of the evidence on which the determination or decision was based (i. e., the "record") which would permit reopening. (Emphasis in original).

The Secretary maintains that the administrative law judge found "new and material evidence" at the 1972 hearing on which to base his finding that since 1961 the residuals of Ortego's auto·injury caused him to be disabled, thus paving the way for application of the "4-year rule."[7] 20 C.F.R. § 404.957(b). Ortego, however, asserts that the district court was correct in reopening the two earliest applications, dating from 1963, for "error on the face of the evidence." An examination of the relevant data presented to the Administration reveals the correctness of the Secretary's assertion.

On April 4, 1961 Ortego was in an automobile accident that caused substantial leg injuries. He entered a county hospital for treatment, but was then transferred to the Veterans' Administration Hospital in Alexandria, Louisiana. He first applied for Social Security disability benefits in 1963. Administration personnel reported that his right leg was shorter than his left, that he could not move for long periods of time or drive with both legs. His employment experience included a wide range of manual laboring jobs, e. g. oil field construction, operating a dredge, farming, tying large bags at a paper mill, and one "desk" job, as a collector-salesman for an insurance company. Two medical reports were submitted with his application, one by a general practitioner and one by an orthopedic surgeon. The general practitioner concluded that Ortego was totally disabled and unable to secure any gainful employment. The orthopedic surgeon, on the other hand, did not feel that Ortego was precluded from engaging in any sort of gainful activity, but did find

that he would be unable to perform any occupations that required extensive walking, crawling, climbing, stooping, or carrying heavy objects. After reviewing all the evidence and somewhat conflicting medical reports, the Secretary determined that Ortego's impairments were not sufficiently severe at the time his insured status expired on December 31, 1962 to preclude all substantial gainful employment compatible with his past work experience. Accordingly, the Secretary denied benefits, and Ortego took no appeal.

Ortego filed a second application for disability insurance benefits in 1967, again alleging that leg and hip injuries had disabled him since 1961. He submitted an additional medical report which stated that the 1961 auto accident had left him with a residual deformity and poor coordination. Based on the report in conjunction with prior evidence, however, the Secretary found no disability. Again, Ortego sought no appeal. His third application, that of 1971, met much the same fate. During a disability interview he stated that he had once tried to work as an insurance collector, but lasted only three or four days because of the great difficulty he experienced getting in and out of his car at every stop. Despite the addition of this evidence, however, the Secretary concluded that Ortego had not established his disability prior to expiration of his insured status. Applicant sought no review of this denial.

Finally, Ortego submitted a fourth application in 1972. When it was denied initially and upon reconsideration, he petitioned for a hearing pursuant to 42 U.S.C. § 405(b); 20 C.F.R. § 404.918. He was represented by counsel before the administrative law judge, and he testified at length concerning the extent of his injuries. Ortego explained that he felt constant pain in his legs and hip radiating into his back and that his right leg bent so slightly that he had great

---

7. The Social Security Administration, as noted by courts, allows the 4-year reopening period to date from either an initial or reconsidered

determination. Shelton v. Sec'y of HEW, 428 F.2d 81, 84 (3d Cir. 1970).

difficulty driving. The administrative law judge observed Ortego's gait and noted that he walked with a considerable limp and had a built-up heel on his right shoe. Ortego revealed for the first time that he could not sit for more than fifty minutes at a stretch because of the severe pain such immobility produced. He also disclosed initially at the hearing that vocational rehabilitation personnel had studied his case and were unable to find a trade for which he could be trained.

Upon a full review of the record the administrative law judge concluded that the residual effects of Ortego's 1961 auto accident had left him disabled since that time. Accordingly, he recommended allowance of benefits and reopened Ortego's third application because it had been denied less than four years from the filing of his fourth request. Since the Social Security Act allows retroactive payment of up to twelve months prior to an application,[8] the administrative law judge awarded benefits beginning in January 1970. The Appeals Council affirmed his decision.

■ The question presented for our review is whether the Secretary abused his discretion in failing to reopen the 1963 and 1967 applications. That inquiry, of necessity, requires this court to determine whether there was such error manifest on the face of the record, *see* Lauritzen v. Weinberger, 514 F.2d 561 (8th Cir. 1975); United States v. Smith, 482 F.2d 1120 (8th Cir. 1973); Harrah v. Richardson, 446 F.2d 1 (4th Cir. 1971); Grose v. Cohen, 406 F.2d 823 (4th Cir. 1969), that the agency was clearly wrong. Given the records and other data available to the Administration at the time it made its earlier negative determinations, we cannot say that the Secretary's decisions were patently incorrect. To the contrary, the decisions were reasonable. Conflicting medical conclusions and some indication that Ortego could secure sedentary employment in accordance with his prior job experience justified the initial denials. It was not until the hearing on the final application that the Administration learned the full extent of Ortego's physical impairment and that he had been unable to perform any sort of gainful activity since the accident. Sufficient new evidence was presented at the hearing to constitute "good cause" for reopening Ortego's prior applications up to the four-year period.

■ The Secretary of Health, Education and Welfare, with the aid of Social Security Administration personnel, has developed an intricate scheme for deciding who is entitled to financial help under the Act. The agency is charged with primary responsibility for dispensing benefits on a nationwide scale. Some judicial check is necessary for those rare cases in which abuse is shown. *See generally* Dunlop v. Bachowski, —— U.S. ——, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). But factual determinations of the Administration are entitled to court enforcement if based on substantial evidence.

Accordingly, the judgment of the district court is reversed and the case is remanded with instructions to reinstate the Secretary's determination that Ortego receive benefits beginning in January of 1970.

Reversed and remanded with directions.

---

**8.** 42 U.S.C. § 423(b).