**Charles J. JOHNSON**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare.**

**Civ. No. 70–929.**

United States District Court, E. D. Louisiana, New Orleans Division.

June 30, 1971.

Jacob H. Morrison, New Orleans, La., for plaintiff.

Gerald J. Gallinghouse, U. S. Atty., Claude J. Aucoin, Jr., Asst. U. S. Atty., New Orleans, La., for defendant.

BOYLE, District Judge:

This action arises out of plaintiff's claim to recover hospital insurance benefits for emergency inpatient hospital services rendered to his wife, now deceased, under the Social Security Act of 1965 and the Social Security Amendments of 1967, Section 1801 et seq., 42 U.S.C. § 1395 et seq., the Medicare provisions.

There is no dispute as to any of the material facts surrounding Mrs. Malina Johnson's hospitalization. On October 29, 1968, Mrs. Johnson, a 70-year old woman who at the time was experiencing severe abdominal pains, was examined by her doctor of ten years' standing, Donald R. McCurley, M.D., in his office. His examination disclosed a palpable mass in the right mid-abdomen. Dr. McCurley was of the opinion that this palpable mass suggested carcinoma of the right colon. On the basis of this intestinal obstruction, a recent history of weight loss and a congestive heart failure condition, he advised that it was immediately necessary for Mrs. Johnson to be hospitalized. At the time, he told Mr. Johnson that he considered this an emergency and because of possible intestinal strangulation, his wife might need to be operated on the next day. Dr. McCurley told plaintiff that other hospitals were contacted but none had available beds. Apparently considering time to be of the essence, the doctor advised plaintiff that his wife should take a bed which he had been able to obtain in Southern Baptist Hospital. Mrs. Johnson's appointment with Dr. McCurley was for 1:00 p. m. After the examination, she was given one hour in which to go home and prepare for hospital admission. Southern Baptist's discharge summary indicates that Mrs. Johnson was admitted to the hospital on October 29, 1968 at 3:40 p. m.

Further amplification of the facts surrounding Mrs. Johnson's hospitalization is contained on a form entitled "Attend-ing Physician's Statement and Documentation of Medicare Emergency" filled in by Dr. McCurley. On it he stated that in his opinion this admission was an emergency. At the time of admission the patient was conscious but non-ambulatory, pale and in pain. She had a temperature of 99° and a pulse rate of 110 per minute. His tentative admitting diagnosis was intestinal obstruction and congestive heart failure. Admission to this hospital was stated to be necessitated by surgery. In addition, Dr. McCurley stated on this form that Southern Baptist Hospital was selected because there were "no beds in other hospitals."

On the evening of the day of hospitalization, Mr. Johnson was informed by Dr. McCurley that two surgeons had been engaged to perform the surgery. However, the next day Mr. Johnson was further informed that the surgeons had decided it was inadvisable to operate on Mrs. Johnson for several days because of her heart condition and mental attitude. Surgery was set for the morning of November 5, 1968. Between October 30 and that date, a series of tests were run on Mrs. Johnson and she was put on medication. On surgery, Dr. McCurley's diagnosis was proved out and an adenocarcinoma of the cecum and right colon with metastases to the lymph nodes and mesocolic fat and base of appendix was disclosed. A right colectomy and ileotransverse colostomy were performed.

Following the operation, Mrs. Johnson was hospitalized until December 19, 1968, the date of discharge. During this time, Dr. McCurley started her on a series of injections which were eventually discontinued because she reacted badly to them. Her condition improved only slightly from day to day up to the time of discharge and did not improve once she was at home. Mrs. Johnson died on January 17, 1969 and from the record it would appear that her death was the result of metastases of carcinoma to the lymph nodes.

Prior to this hospitalization, Mrs. Johnson went through a series of examinations by Dr. McCurley because of the

same abdominal pains, none of which occasioned him to hospitalize her. The record discloses that the first time the palpable mass was detected was on October 29, 1968, the day on which he did hospitalize her.

Plaintiff filed a claim with the Social Security Administration for Mrs. Johnson's hospital expenses covering the period of October 29, 1968 to December 19, 1968. The basis for this claim is the "Payments for emergency hospital services" section of the Medicare provisions, 42 U.S.C. § 1395f(d) (2). Section 1395f (a) of the Code provides that payment for services furnished an individual may be made only to providers of services which are eligible therefor under Section 1395cc of this statute, which requires filing of an agreement with the Secretary of Health, Education and Welfare for eligibility. A hospital so filing is termed a participating hospital. The exception to this is found in § 1395f(d) (1) of the Code which provides: "Payments shall also be made to any hospital for inpatient hospital services furnished in a calendar year, by the hospital * * to an individual entitled to hospital insurance benefits * * * even though such hospital does not have an agreement in effect * * * if (A) such services were emergency services, * * *." (This section is part of the Social Security Act of 1965.) The Social Security Amendments of 1967, which became effective on January 2, 1968, added § 1395f (d) (2) giving an individual the right to claim directly for hospital insurance benefits under certain conditions which are enumerated therein [1] and under which

plaintiff qualified by paying the hospital bills himself. This provision was added because of the unwillingness of some nonparticipating hospitals to request medicare payments for emergency services "thereby working a financial hardship upon those who were supposed to have been relieved of such hardships under the program." 2 U.S.Code Cong. & Admin.News, p. 2918 (1967). As Southern Baptist Hospital was not a participating hospital at the time of Mrs. Johnson's hospitalization, the claim for hospital expenses is based on the emergency provisions of § 1395f(d) (2).

The Social Security Administration denied plaintiff's claim initially, and on reconsideration, on the basis that the services provided at Southern Baptist Hospital were not emergency services within the meaning of the social security law. A request for a hearing before the Social Security Administration Bureau of Hearings and Appeals was then filed by plaintiff. The hearing examiner determined that an emergency situation did exist at the time Mrs. Malina Johnson was hospitalized and continued until she was discharged. Subsequently, the Appeals Council of the Social Security Administration reviewed the hearing examiner's decision on its own motion and reversed the decision. This action was instituted for review and reversal of the Appeals Council's rulings. We consider the matter on cross motions for summary judgment.

The Appeals Council's reversal was based on Regulations adopted by the Secretary of Health, Education and Welfare, §§ 405.191 [2] and 405.192,[3] 34 F.R.

---

1. There is some confusion in the record as to when plaintiff's claim for hospital benefits was filed. The hearing examiner stated in his decision that claimant signed a request on December 31, 1968 for the hospital benefits. The form on which plaintiff acknowledged that he had paid the bill for the deceased beneficiary is dated February 27, 1969 and it is this form which brings plaintiff within the terms of the Social Security Amendments of 1967. 42 U.S.C. § 1395f(d) (2). The initial request was turned down in a letter dated February 10,

1969 and on reconsideration was turned down by letter dated June 26, 1969. The Government, in its brief, treats the claim as having been filed on February 27, 1969, the date on the above-mentioned form.

2. Which provides, in pertinent part, as follows:
(a) *General.* Payment to a nonparticipating hospital for emergency services (as defined in § 405.152(b)) can be made

only for the period during which the emergency exists.

(b) *Objective.* The objective of paragraph (a) of this section is to limit reimbursement for emergency in-patient hospital services only to periods during which the patient's state of injury or disease is such that a health or life endangering emergency existed and continued to exist, requiring immediate care which could only be provided in a hospital.

(1) The finding that an emergency existed and/or has ceased will ordinarily be supported by medical evidence including the attending physician's supporting statement (see § 405.152(a), (8) and, when appropriate, information furnished by the hospital. However, a statement by the physician or hospital that an emergency existed, in the absence of sufficient medical information to establish the actual emergency, will not constitute sufficient evidence of the existence of an emergency.

(2) An emergency no longer exists when it becomes safe from a medical standpoint to move the individual to a participating hospital or other institution, or to discharge him.

(3) Existence of medical necessity for emergency services is based on the physician's assessment of the patient prior to admission to the hospital. Therefore, conditions developing after a nonemergent admission are not considered emergency services for purposes of this subparagraph.

3. Which provides, in pertinent part, as follows:

(a) *General.* Services, to be emergency services (as defined in § 405.152 (b)), must be furnished by the most accessible hospital available and equipped to furnish such services.

(b) *Objectives.* The objective of the requirement in paragraph (a) of this section is to limit reimbursement for emergency inpatient hospital services provided by nonparticipating hospitals to situations where transport of the patient to a participating hospital would have been medically inadvisable, e. g., the participating hospital would have taken longer to reach and the patient's condition necessitated immediate admission for hospital services; and for so long as that condition precluded the patient's discharge or removal to a participating hospital.

(1) In emergency situations, time is a crucial factor and the patient must ordinarily receive hospital care as soon as possible. Under such circumstances, all factors must be considered which bear on whether or not the required care could be provided sooner in the nonparticipating hospital than in a participating hospital in the general area. The determination must take account of such matters as relative distances of the participating and nonparticipating hospitals, the transportation facilities available to these hospitals, the quality of the roads to each hospital, the availability of beds at each hospital, and any other relevant factors. All of these factors are pertinent to a determination of whether a hospital is "the nearest," or "further away," or "closer to" the place where the emergency occurred.

(2) The considerations referred to in subparagraph (1) of this paragraph are generally applicable to rural areas, where hospitals are likely to be spaced far apart. In urban and suburban areas, where both participating and nonparticipating hospitals are similarly available, it will be presumed that the services could have been provided in a participating hospital. This presumption can be overcome only by clear and convincing evidence showing the medical or practical necessity in each individual case for taking the patient to a nonparticipating hospital instead of a similarly available participating hospital.

\*     \*     \*     \*     \*

(c) *Conditions under which the accessibility requirement will be met.* Where an individual must be taken to a hospital immediately for required diagnosis or medical treatment, the accessibility requirement will be met, except as provided in paragraph (d), of this section, if it is established to the satisfaction of the Administration that:

(1) The nonparticipating hospital which furnished the emergency services is the nearest hospital to the point at which the emergency occurred (subject to the presumption contained in paragraph (b) (2) of this section) ; and, if there is a similarly available participating hospital, the evidence shows the medical or practical necessity for taking the patient to a nonparticipating hospital; or

(2) One or both of the following reasons apply:

(i) No closer participating hospital has a bed available or will accept the individual; or

(ii) the nonparticipating hospital is the nearest one equipped medically to deal with the type of emergency involved; or it is the nearest hospital which is equipped to handle the emergency which had a bed available when the emergency occurred.

11208. In applying these Regulations, it found that Mrs. Johnson's hospitalization at Southern Baptist Hospital did not consitute "emergency services" as " * * * the diagnostic studies during the period following admission, do not suggest that an emergency was being treated. There is no evidence establishing a sudden significant change in her condition or a sudden threat to her life and health which required immediate hospitalization at the nearest available facility." And also that " * * * the record does not establish that every reasonable attempt was made to have Mrs. Johnson admitted to one of the numerous hospitals in New Orleans which are participating fully under the Medicare program." These findings were, as stated, based on the two-pronged definition of "emergency" in the Regulations: (1) it is necessary to find that an emergency did in fact exist under such conditions that the services rendered were "necessary to prevent the death or serious impairment of the health of the individual." § 405.191, § 405.152(b); (2) the nonparticipating hospital to which the patient was taken must have been the most accessible hospital which had a bed available, and in urban areas the evidence must clearly and convincingly show that no participating hospital had a bed available or would accept the patient.

■ We find that the Appeals Council was in error in applying the standards set forth in these Regulations to the instant case. These Regulations, which are stated to be amendments to Regulations No. 5, were to be effective on the date of publication in the Federal Register, July 3, 1969. 34 F.R. 11201. Regulations No. 5, to which they refer and which were published on July 27, 1966, contain no definition of the term "emergency services." 31 F.R. 10120, § 405.152. Between 1966 and 1969, no other regulations were published by the Secretary of Health, Education and Welfare purporting to further define the term. Therefore, the only standard of which a potential claimant would have had notice prior to publication of the 1969 Regulations would be § 1395f(d) of the Medicare act, which itself sets forth no limitation on use of a non-participating hospital in a medical emergency. Were we now to impose on plaintiff the necessity of clearly showing that Mrs. Johnson's doctor, at the time he determined that a medical emergency existed in her case, called numerous participating hospitals in order to ascertain whether they had beds available would be to place on him an unfair burden.[4] On October 29, 1968, the date of hospitalization, there was no way in which either the doctor or the patient could have known of the specific and detailed evidence required by the 1969 Regulations.[5] Whatever right plaintiff had to reimbursement under the emergency provision covering medical expenses, it matured and was asserted prior to the effective date of the 1969 Regulations. To apply them here would be to give them retroactive effect. The Supreme Court has stated, in Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964), that "the first rule of construction is that legislation

4. The Notice of Hearing form (dated July 31, 1969) which was sent to plaintiff apprising him of the date and nature of the hearing only stated that:

"The general issues to be determined are *whether or not the hospitalization of the claimant was of an emergency nature within the meaning of the Social Security law.*"

and

"The specific issues on which findings will be made and conclusions will be reached are *if it is found that hospitalization was of an emergency nature, whether it was necessary for the claim-* *ant to remain in a non-participating hospital for the duration of her hospitalization from October 29, 1968 through December 18, 1968.*"

The italicized part of the above sentences indicates what was typed onto the form.

5. In fact, these Regulations were first published as proposed amendments on November 15, 1968, a date subsequent to this hospitalization. 33 F.R. 16657. At that publication their purpose was stated to be to formulate guidelines for determining the accessibility requirement in emergency hospital cases.

must be considered as addressed to the future, not to the past  *  *  *  [and] a retrospective operation will not be given to a statute which interferes with antecedent rights  *  *  *  unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.'" The *Greene* case also involved application of a regulation to a claim which was filed before the regulation was issued and the Court, there, refused to apply it. See, also, Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969).

We do not mean to suggest that in an emergency situation an individual is free to indiscriminately use the services of any hospital of his choice, but do hold that in a case such as this where the evidence reasonably explains the hospitalization in a non-participating hospital, such evidence should be sufficient to satisfy the intent of the Act prior to the 1969 Regulations.

Thus, the issue here turns on whether Mrs. Johnson's hospitalization constituted a medical emergency within the terms of the Social Security Act. While, as we said, the 1969 Regulations are inapplicable to this case, the definition of emergency contained there is a persuasive one being consistent with the policy of the Act. We concur in our brother's views in Carey v. Finch, 316 F.Supp. 1263 (E.D.La.1970), that it reasonably and fairly comports with the statute as enacted. Judge Rubin in that case concluded that "The test adopted by the regulations is based entirely on the physician's assessment of his patient prior to the admission. If the doctor thinks the condition is an emergency, the fact that his concern is later proved unfounded does not deprive the patient of benefits.  *  *  *  The test adopted by the regulations is predicated on the doctor's diagnosis prior to admission, an entirely reasonable standard. Nor is it inappropri-

ate to emphasize, even at the expense of redundancy, that the crucial diagnosis is made by the patient's own attending physician, not someone in the government's employ."[6] In *Carey*, the Court was applying the standards set forth in Regulation § 405.191. For our purposes, the definition is as reasonable as any which could be formulated under the Medicare statute.

■■  Having fixed on the definition, we find that the Appeals Council, even in applying Regulation § 405.191 to the instant case, did not have substantial facts on which to base its finding, i. e., that a medical emergency did not exist at the time of hospitalization. See *Carey*, at page 1265, and cases cited therein. In making this determination, we rely on the record as a whole, which consists mainly of the transcript of the hearing at which plaintiff was the only witness. (The other pertinent documents in the record are hospital records, forms and correspondence between the plaintiff and the Government.) In so doing we are not bound by the traditional rules of evidence and may rely on the same hearsay evidence as the hearing examiner could if we find it probative. Breaux v. Finch, 421 F.2d 687 (5th Cir. 1970); 42 U.S.C. § 405(b). There can be no doubt that at the time of the hospitalization, Mrs. Johnson's physician viewed her condition as emergent. He in fact hospitalized her approximately one hour after her examination, which ought to speak, and in our view does speak, for itself. At the time, he told her husband that he considered Mrs. Johnson's condition in the nature of an emergency because the intestinal obstruction which he discovered could result in strangulation; that the situation might demand surgery on the next day; that other beds were not available and he had procured one in Southern Baptist. He later noted on the hospital's Discharge Summary that his regular examination of the

6.  See also Regulation §.405.191(b) (3), 34 F.R. 11208.

patient suggested carcinoma of the right colon, which was the palpable mass. That the surgeons who were later engaged decided to put off the operation for some days cannot negate an emergency finding, even under the Regulations. We are looking at the attending physician's assessment of his patient's condition at the time of hospitalization and it was that an emergency existed. Having determined that there was an emergency, we find that such emergency continued until Dr. McCurley determined that it was safe from a medical standpoint to discharge Mrs. Johnson, which was done on December 19, 1968.[7]

We have, of course, not applied the accessibility requirement of the 1969 Regulations to this case. However, we have found that an emergency situation existed here even within the terms of the 1969 Regulations' definition. In addition, we have no difficulty in finding that the accessibility requirement of the 1969 Regulations could be satisfied were the Court required to apply it. There is substantial evidence to support a finding that Southern Baptist Hospital was the most accessible hospital at the time. The record shows that plaintiff was told by Dr. McCurley that other hospitals were contacted, but that the only bed he could obtain was in Southern Baptist. In addition, as previously noted, Dr. Mc-Curley wrote in on the hospital's Medicare form that there were no beds available in other hospitals. The Government had the opportunity at the hearing to introduce evidence which would have controverted these facts. However, it chose not to do so. Therefore, the above statements standing alone in the record are clear and convincing to the Court on the point of whether hospitalization at a non-participating hospital was compelled under the facts. We find that the Appeals Council was in error in finding substantial evidence to support its conclusion that beds in participating hospitals were available at the time of Mrs. Johnson's hospitalization.

Accordingly, we hold that the decision of the Appeals Council should be reversed and the decision of the hearing examiner should be reinstated. Therefore, plaintiff is entitled to payment under Medicare for the hospitalization of plaintiff's wife for the period of October 29, 1968 to December 19, 1968.

---

7. See Regulation § 405.191(b) (2), 34 F.R. 11208.