SAINT FRANCIS MEMORIAL
HOSPITAL, a Non-Profit
Corporation, Plaintiff,

v.

Caspar W. WEINBERGER, Secretary of
Health, Education and Welfare, et
al., Defendants.

No. C–73–0495 AJZ.

United States District Court,
N. D. California.

Order Granting Summary Judgment
June 5, 1975.

On Motion to Alter Judgment
April 23, 1976.

Weissburg & Aronson, Robert A. Klein, Los Angeles, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., George C. Stoll, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ZIRPOLI, District Judge.

This case presents the question whether hospitals, as "providers" of medical services to Medicare recipients, are entitled to reimbursement under the Medicare Act for interest paid on construction loans in the year they pay it when, under their normal accounting practices, they "expense" such interest payments. Plaintiff is a hospital recognized as a provider under the Medicare Act, 42 U.S.C. section 1395. It seeks to compel defendants, the Secretary of Health, Education and Welfare, the Blue Cross Association and the Hospital Service of California to reimburse it for over $200,000 in interest payments it made during the years 1966, 1967 and 1968 on loans it took out for construction of a replacement hospital facility. Defendants have moved to dismiss and both plaintiff and defendants have moved for summary judgment. Having reviewed their memoranda and the records in this case, the court denies defendants' motion to dismiss and grants plaintiff's motion for summary judgment.

The Medicare Act states that providers are to be reimbursed the "reasonable cost" of services rendered to Medicare recipients. 42 U.S.C. section 1395f(b). Reasonable cost is the cost actually incurred by the provider, and is to be determined in accordance with regulations issued by the Secretary or his delegate. 42 U.S.C. section 1395x(v)(1)(A). In 1966 the Secretary issued regulations which state that "[n]ecessary and proper interest on both current and capital indebtedness is an allowable cost." 20 C.F.R.

section 405.419(a). They further define interest on capital indebtedness as "the cost incurred for funds borrowed for capital purposes such as acquisition of facilities and equipment, and capital improvement." 20 C.F.R. section 405.419(b). They indicate that reimbursement should result in current payment of expenses incurred, 20 C.F.R. section 405.402, and that such costs should be determined by generally accepted accounting methods. 20 C.F.R. section 405.-406(a). In November, 1968, the Secretary issued a Provider Reimbursement Manual. Section 206 of that Manual provided that "[i]nterest costs incurred during the period of construction must be *capitalized* as a part of the cost of the facility." (Emphasis in original.)

In August, 1965, plaintiff incurred construction loans to pay for construction of a replacement facility. During the years 1966, 1967 and 1968 it paid approximately $575,000 in interest on these loans. In 1968, due to cost overruns, it obtained an additional loan. Under its accounting methods, plaintiff treated these interest payments as expenses. In May, 1969, it moved into the new facility. During construction it continued to operate its old facility; about 40 percent of the patients at that hospital were Medicare recipients. In August, 1968, it sought reimbursement for the interest payments it had made during 1966 and 1967; in December, 1969, it sought reimbursement for its 1968 interest payments—a total of $246,172. Defendants disallowed the claims for interest. Plaintiff appealed the disallowance to the Medicare Provider Appeals Committee, which held a hearing on the question. At the hearing, plaintiff produced as an expert witness on accounting Professor H. E. Miller of Michigan State University. Professor Miller argued energetically that expensing interest payments on construction loans was an accepted and desirable accounting practice, although he conceded that capitalizing such payments was also accepted. See Tr. 33, 47, 54. Additionally, plaintiff's controller, George Forsyth, explained the adverse impact on plaintiff's operations of having to capitalize such payments. See Tr. 75–76.

On November 16, 1972, the Committee, in its decision number 168, denied plaintiff's appeal. It accepted plaintiff's contention that it had a long-standing practice of expensing interest payments and found "substantial documentation" to support the conclusion that expensing was an accepted accounting practice. It found further that there had been "much ambiguity, uncertainty and lack of direction" on the proper handling of interest payments on construction loans and that section 206 of the Manual "clarified" 20 C.F.R. section 405.419 in this regard. Thus,

> although it is repugnant to [the Committee's] sense of equity and fairness to apply any rule retroactively, Manual Section 206 . . . is interpretive only for purposes of clarifying the Regulations and must be applied to all periods under the Medicare Program.

Plaintiff then filed its complaint in this lawsuit, challenging the denial of reimbursement on a variety of grounds. It stated nine causes of action, seeking to recover, *inter alia,* for the claimed arbitrariness of section 206 of the Manual, for the arbitrariness of the defendants in denying the claim, for a retroactive taking of its property without the compensation required by the Fifth Amendment, because the hearing afforded it had been unfair, because defendants should be estopped to deny that expensing is permitted under the Act, and because defendants had not promulgated section 206 in the manner required by the Administrative Procedure Act. It prayed an award equal to the amount it had paid out in interest.

Defendants have moved to dismiss on the ground that the court is without subject matter jurisdiction in this case because the suit is barred by sovereign immunity. It relies on section 205(h) of the Act, 42 U.S.C. section 405(h), which provides that

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decisions

of the Secretary shall be reviewed by any person, tribunal or governmental agency, except as herein provided.

In *Stuckey v. Weinberger,* 488 F.2d 904 (9th Cir. 1973), the court interpreted the first sentence above as requiring only that principles of res judicata be applied to the Secretary's decisions—precluding relitigation of questions of fact decided by the Secretary. In *Rothman v. Hospital Serv. of Calif.,* 510 F.2d 956 (9th Cir. 1975), the court interpreted *Stuckey* to permit review under 5 U.S.C. section 706(2) of the constitutional and statutory propriety of determination by the Secretary as to what are compensable costs under the Act. The court there relied on the general presumption of review unless "there is clear and convincing evidence of Congressional intent to preclude review expressed in the statute itself or in the legislative history." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681, 686–87 (1967). Under *Rothman,* then, the court clearly has jurisdiction to consider most of plaintiff's claims. Defendants argue that *Rothman* should not be applied here in light of the amendment to section 1878(f) of the Act, 42 U.S.C. section 1395oo (f), on October 26, 1974. This amendment guarantees judicial review to providers of medical services in certain situations not applicable here, and defendants argue that Congress' express provision that review be available in these situations implies that such review was not previously available and is not available as to other situations. Whatever the value of defendants' argument as a matter of abstract statutory interpretation, the court is not persuaded that one can find in such indirect reasoning the "clear and convincing evidence" that is needed to overcome the presumption of reviewability. It therefore denies defendants' motion to dismiss.

There remain the cross-motions for summary judgment. It appears to the court that the core of the dispute here is a determination of what the impact of section 206 of the Manual was on the previously existing statutory and regulatory scheme. Not only is this question important for plaintiff's claims based on estoppel and the due process limitations on retroactivity, it is central to the claim that the rule-making procedures of the Administrative Procedure Act, 5 U.S.C. section 553, were impermissibly disregarded when section 206 was promulgated. Since the court concludes that those rule-making procedures do apply here and have not been complied with, it does not find it necessary to reach plaintiff's other theories.

■ Defendants seek to sidestep the rule-making procedures of section 553 by noting that section 206 is part of an "administrative staff manual" within the meaning of 5 U.S.C. section 552(a)(2)(C). That section, part of the Freedom of Information Act, requires that such manuals be made available to the public. Since the Provider Reimbursement Manual is available to the public, defendants conclude, they have satisfied their obligations under section 553. But the court need not accept the label the agency puts on the regulation. *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); *Pharmaceutical Manuf. Ass'n v. Finch,* 307 F.Supp. 858 (D.Del. 1970). Surely the agency cannot satisfy the rule-making requirements of section 553 merely by including a substantive rule in a "manual" that is generally available; the court must look to section 553 to determine whether it applies to section 206.

Section 553 requires that an agency give public notice and hold a hearing on proposed substantive rules before they are put into effect. It

> was enacted to give the public an opportunity to participate in the rule-making process. It also enables the agency promulgating the rules to educate itself before establishing rules and procedures which have a substantial impact on those regulated.

*Texaco, Inc. v. Federal Power Comm'n,* 412 F.2d 740, 744 (3d Cir. 1969). Defendants seek to escape these requirements on the theory that section 206 is an "interpretive rule" and therefore exempted from the rule-making requirements by section

553(b)(3)(A). It is difficult to determine which rules are substantive and which are merely interpretive; each rule must be examined in relation to the regulatory structure existing at the time it is promulgated to determine whether it should invoke the rule-making requirements of section 553.

Cases interpreting section 553 provide some guidance for distinguishing between substantive and interpretive rules. In *Pharmaceutical Manuf. Ass'n v. Finch, supra,* 307 F.Supp. 858 (D.Del.1970), the court faced a challenge to a proposal by the Commissioner of Food and Drugs to revise the types of evidence he would consider in evaluating the effectiveness of drugs. The court held that the rule-making requirements of section 553 had to be followed to implement these changes even though they appeared procedural. It focused mainly on two factors. First, it noted the all-pervasive and substantial impact the change would have in the industry—the review of some 2,000 drugs would be affected. *Id.* at 864. Second, it noted that the wisdom of altering the standards in force depended upon whether applying the new standards justified the added drain on research resources. *Id.* at 865–66:

> [J]udgments concerning allocation of such scarce resources involve very difficult and fundamental policy determinations for the Commissioner. . . . Determinations of such sensitivity and import of course are for the Commissioner and not the Court. The existence of such important questions, however, certainly suggests that the Commissioner has the responsibility to fully inform himself concerning these and other important implications of the September regulations.

Similarly, in *National Motor Freight Traffic Ass'n v. United States,* 268 F.Supp. 90 (D.D.C.1967) (three-judge court), the court held that a reparation procedure established by the Interstate Commerce Commission could not be put into effect unless the ICC complied with section 553. The basis for the procedure was a recently-enacted statute that created a judicially-enforceable right to recover illegal overpayments; the plaintiffs contended that Congress had not intended to confer authority on the ICC to create a parallel administrative remedy for such recoveries. They argued that to create such a procedure would have a very substantial impact on them because it would permit informal adjudication of the legality of rates that were of industry-wide application. The court assumed for purposes of the case that the ICC could, under the statute, set up an administrative reparation procedure, and held that it could only do so after notice and a hearing because to create such a procedure would be a "significant step in the implementation of the newly-conferred statutory judicial remedy." *Id.* at 97.

By contrast, cases holding that rules are merely interpretive generally stress that the new rules have very little effect on the existing regulatory structure. In *Commonwealth of Pennsylvania v. United States,* 361 F.Supp. 208 (M.D.Pa.) (three-judge court), aff'd, 414 U.S. 1017, 94 S.Ct. 440, 38 L.Ed.2d 310 (1973), for example, plaintiffs challenged a new procedure the ICC had created to simplify applications by railroads wishing to abandon little-used lines. As distinguished from the preexisting procedure, the new procedure permitted the railroads to use a new "short form" application in certain cases. Additionally, the new procedure created certain rebuttable presumptions, as that a line on which the freight-load over the previous year had been less than 34 carloads per mile of track could properly be abandoned. The court held that "the new procedures are mechanistic, not substantive." *Id.* at 221. It noted that the statute did not require hearings on proposed amendments, *id.* at 213, and that the burden of proof remained on the railroad to justify the abandonment and to provide substantial evidence to support the ICC's decision. *Id.* at 216, 218. While it conceded that the new procedure placed the burden of going forward with evidence on the opponents of abandonment, it felt that this streamlining did not affect the real substance of the review procedure, which had remained unchanged. *Id.* at 215. Similarly, in *Continental Oil Co. v. Burns,* 317

F.Supp. 194 (D.Del.1970), the court confronted a challenge to a Federal Reserve Board interpretation letter issued to clarify its Regulation Z, 12 C.F.R. 226.4(c). The regulation had required that late payments, delinquency payments or defaults be treated as "finance charges" for purposes of the reporting requirements of the Truth in Lending Act. The interpretive letter had set forth three criteria to be applied in determining whether a given charge fell within Regulation Z. The court held that the interpretive letter was not a substantive rule within the meaning of section 553 because it did not alter the existing rule in any way, but only clarified it, and had no retroactive effect. *Id.* at 198. See also *Pacific Lighting Serv. Co. v. Federal Power Comm'n,* 518 F.2d 718, 719 (9th Cir., 1975) (slip op. at 2.)

 From these cases, which the parties have discussed at some length, it appears that there are two basic inquiries the court should make to determine whether section 206 of the Manual should be considered a substantive rule subject to the rule-making requirements of section 553. First, and more important, it should look to the impact on the parties subject to the regulation— are they subject to any new substantive duties or deprived of any preexisting substantive rights. In this regard, it may consider the impact of retroactive application; if such application appears inequitable the rule apparently has substantive impact. Second, it should consider whether there is such genuine ground for difference of opinion on the wisdom of the policy embodied in the rule as to make the hearing process a meaningful and important requirement. If this is a matter upon which the agency should act only after informed reflection, the policies underlying section 553 seem to apply. Ultimately the court must make a somewhat eclectic decision based upon its reading of the regulations before it and its perceptions of the substantive wisdom of section 206.

 To analyze the first prong—impact on the parties—the court must look to what the regulations said before section 206 was promulgated to "clarify" them. As set out above, 20 C.F.R. section 405.419 designated interest on capital expenses as an allowable cost. The parties agree that this regulation makes the interest involved here a recoverable cost; the only question was when it could be recovered. Section 405.402(a) stated that "payment is to be made on the basis of the current costs of the individual provider." Section 405.402(b)(1) provided further that

the methods of reimbursement should result in current payment so that institutions will not be disadvantaged, as they sometimes are under other arrangements, by having to put up money for the purchase of goods and services well before they receive reimbursement.

Finally, for the purposes of determining the amount due a provider, the regulations required providers to maintain sufficient records and provided that

accounting, statistics, and reporting practices which are widely accepted in the hospital and related fields are followed. Changes in these practices and systems will not be required in order to determine costs payable under the principles of reimbursement. Essentially the methods of determining costs payable under title XVIII involve making use of data available from the institution's basic accounts, as usually maintained, to arrive at equitable and proper payment for services to beneficiaries.

20 C.F.R. section 405.406(a). As the court reads these regulations, they clearly permit providers who usually treat interest on construction loans as expenses to seek reimbursement for such expenses in the year they are incurred; section 206 clearly altered that state of affairs. Arguably, under section 405.406(a), the provider would only be permitted to recover those amounts if recovery were determined to be "equitable and proper." But section 206 permits no such inquiry and instead erects an insurmountable barrier to reimbursement on a current basis for interest expenses. Evidently the author of the Manual recognized the importance of this new requirement for

he put it in italics. It is difficult to deny that it has substantive impact—sufficient when applied retroactively to be repugnant to the Provider Appeals Committee's sense of equity and fairness—for it requires hospitals to bear a much heavier burden in financing construction and to arrange for loans on different terms. Under these circumstances, the court is forced to conclude that section 206 has a sufficient impact on the parties to require that it be treated as a substantive rule for the rule-making purposes of section 553.

Defendants argue that section 206 should not be treated as a substantive rule because the regulations had been ambiguous before it was promulgated. Thus, they reason, plaintiff was operating under a misapprehension about the proper method for reimbursement of interest expenses and cannot complain if, in the end, it turns out that it guessed wrong. While these arguments may properly be addressed to plaintiff's contention that it had a vested right to current reimbursement of which it could not constitutionally be deprived retroactively, see *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621–22, 11 L.Ed.2d 576, 584–85 (1964), they do not bear on the court's determination whether the rule is substantive for purposes of section 553. In essence, defendants' argument seems to be that because the Secretary created an ambiguity in the regulations he need not adhere to the proper rule-making procedure when he clears up that ambiguity. Without reaching the issue of whether there was any ambiguity in the regulations as they existed at the time section 206 was promulgated, the court rejects this argument as fundamentally inconsistent with the purposes of the rule-making requirements of the Administrative Procedure Act. The Medicare Act conferred on the Secretary the authority and duty to promulgate regulations governing reimbursement of providers of medical services. He could not fulfill that duty by enacting ambiguous regulations through the proper procedure and then "clarifying" them behind closed doors thereafter. Since the court has concluded that section 206 did have a material impact

on providers, it is no answer for defendants to say that it was a foreseeable development. Indeed, the argument defendants make here underscores the substantive nature of section 206 because it recognizes as well that this "clarification" is an important development.

■ Defendants also argue that plaintiff should be estopped from challenging the adequacy of the procedure whereby section 206 was promulgated because it did not inquire about the propriety of continuing to expense interest costs, but decided to "blindly adhere" to its established practice. While such inquiry might bear on plaintiff's estoppel theory, see *Columbia Heights Nursing Home v. Weinberger,* CCH Medicare Guide ¶ 10,736 (W.D.La.1974), it does not affect the rule-making requirement. The regulations gave plaintiff no reason to suspect that it could not adhere to its traditional accounting practices in applying for Medicare reimbursement. It appears that defendants' essential argument is that plaintiff should have divined that such reimbursement is, as they argue here, fundamentally at odds with the purposes of the Medicare Act because it does not adequately tie reimbursement to provision of medical services to Medicare recipients. Thus, they contend that since a provider can withdraw at any time and keep the facility for which the loan was taken out, to permit it to recover interest payments during the period of construction raises the spectre that Medicare funds will be used to underwrite facilities that will not be used for Medicare recipients. But it may well be that the economic realities of the hospital business dictate that hospitals must become and remain Medicare providers to survive. Plaintiff contends that, given the neighborhood in which it operates, it will have a substantial patronage from Medicare patients as long as the program lasts; in its case at least, the policy upon which defendants rely does not apply. It adds that to refuse to reimburse hospitals currently for interest expenses will severely inhibit construction of needed facilities, a goal of the Medicare Act. The court need not reach

the merits of this dispute over the purposes of the Act for it concludes that defendants' argument proves too much. First, it demonstrates the substantive importance defendants place upon section 206—which they view as essential to the integrity of the Medicare Act. It therefore further underscores the substantive nature of section 206. Second, the dispute over the arguably conflicting goals of prompting construction of needed facilities and guaranteeing that reimbursement properly reflects services rendered Medicare recipients demonstrates that there exists here just the sort of controversy that should be the subject of a hearing by the Administrative Procedure Act. It is a matter properly directed to the expertise of the agency, not the court.

■ Defendants also argue that even if they promulgated section 206 improperly under the Administrative Procedure Act plaintiff may not complain of that impropriety. First, they argue that since plaintiff submitted its requests for reimbursement for 1966 and 1967 before section 206 was promulgated it cannot have been harmed by the subsequent promulgation of section 206. But they concede that plaintiff's claims for interest for those years were rejected because of section 206, so this chronology seems unimportant to the court.

■ Second, they argue that because plaintiff clearly had actual notice of section 206 prior to submitting its claim for 1968, it cannot complain about the way section 206 was promulgated because it could have altered its accounting system to comply with section 206 before submitting its 1968 claim. This argument entirely disregards the purpose of the rule-making requirements of section 553. Those requirements do not merely provide a means to inform interested parties about official action that will affect them. Their main purpose is to permit those parties to be heard *before* any official action is undertaken. Defendants apparently concede that section 206 would require plaintiff to revise its system of accounting. Additionally, it would require it to bear a substantially greater burden in financing construction than it would if currently reimbursed for interest costs. While it might be able to finance differently to provide for this burden, the change is important and substantive. Section 553 requires more than notice to validate defendants' action in effectuating that change.

■ Third, defendants urge that plaintiff's failure to challenge section 206 soon after receiving notice precludes this challenge. The court appreciates that some such waiver doctrine might establish a desirable limitations period that would guarantee, after a certain amount of time, that administrative action could not be challenged. But such a doctrine should not apply in this case. Plaintiff here did challenge section 206 through the administrative appeal mechanism defendants have set up. It never acquiesced in it but demanded payment for the interest it had paid. Defendants appear to argue that since plaintiff chose to go through administrative channels first instead of going directly to court it should now be foreclosed from a remedy in court. While it may well be that plaintiff would not have been required to exhaust those administrative remedies, the court is unwilling to hold that its voluntary exhaustion operates to deprive it of judicial redress.

■ Ultimately, it appears that defendants believe that plaintiff may not prevail on its Administrative Procedure Act theory standing alone. Instead, they feel that it must also rely on estoppel or due process restraints on retroactivity to bring the Administrative Procedure Act argument to fruition. The court cannot agree. It has concluded that section 206 of the Manual is a substantive rule that cannot be promulgated except by the rule-making procedures set out in 5 U.S.C. section 553. It need conclude no more to hold in plaintiff's favor. Defendants cannot excuse their failure to adhere to section 553 by arguing that plaintiff should have been more wary because the underlying purpose of the Administrative Procedure Act is to guard the rights of interested members of the public

who do not constantly monitor the administrative agencies that affect them. The administrators themselves make the initial determination whether to proceed by formal rule-making or by more informal means; they cannot easily shift the burden of their miscalculation onto the public. Having concluded, based on a review of the preexisting regulatory framework, that section 206 worked a substantive change, the court must grant plaintiff's motion for summary judgment.

IT IS THEREFORE ORDERED that defendants' motion to dismiss is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted.

## ON DEFENDANTS' MOTION TO ALTER JUDGMENT

■■■■ This dispute concerns the propriety of the application of certain provisions of the Medicare Provider Reimbursement Manual, HIM–15, issued in November, 1968, to claims for reimbursement under the Medicare program, 42 U.S.C. § 1395 et seq., submitted by plaintiff for the years 1966, 1967, and 1968. More specifically, the dispute centers around the applicability of section 206 of the Manual which requires that hospitals capitalize rather than expense interest costs incurred in connection with construction. On June 5, 1975, this court entered an order granting summary judgment in favor of plaintiff on the ground that section 206 was not promulgated in accordance with the rule-making requirements of the Administrative Procedure Act, 5 U.S.C. § 553.[1] Defendants now move the court for a new trial[2] on the ground that since section 553(a)(2) of the APA exempts matters "relating to . . . loans, grants, [or] benefits," and since the Medicare Provider Reimbursement Manual is a matter relating to a benefit program, compliance with section 553 was not required.[3] While there may be some merit to defendants' belatedly asserted arguments, see *Opelika Nursing Home, Inc. v. Richardson*, 356 F.Supp. 1338, 1342 (M.D.Ala.1973), aff'd, 490 F.2d 841 (5th Cir. 1974); *Attorney General's Manual on the Administrative Procedure Act* at 28 (1947), the court nevertheless concludes that defendants' motion must be denied because the retroactive application of section 206 does not comport with the notions of fundamental fairness embodied in the Due Process Clause of the Fifth Amendment.

■■■■ Retrospective application of statutes and regulations is frowned upon where the application of such changes in the law works to deprive a party of an antecedent right. *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621–22, 11 L.Ed.2d

1. The factual background of the case is set forth in detail in the court's order of June 5, 1975, and will not be repeated here.

2. Since defendants are in reality seeking relief from the grant of plaintiff's motion for summary judgment rather than seeking a new trial, the court will treat this as a motion to alter judgment pursuant to Rule 59(e). *See* 6A Moore's Federal Practice ¶ 59.12[1].

3. Defendants further contend that their failure to publish section 206 in the Federal Register as required by 5 U.S.C. § 552 does not invalidate section 206 since plaintiff had actual notice of the new provision. *See* 5 U.S.C. § 552(a)(1). Since there is a question of fact concerning whether plaintiff had actual notice of section 206 at the time it filed its claims for 1966 and 1967, the court holds that that issue may not be resolved on a motion for summary judgment. Similarly, the court finds that it cannot now resolve the question of whether the

Secretary's failure to follow the dictates of 45 C.F.R. section 5.13 invalidates section 206. Although that regulation requires publication in the Federal Register of provisions such as section 206, and although the regulation does not contain a saving clause for cases of actual notice, the due process considerations underlying the doctrine that an administrator is bound by his own regulations would seem to require some showing of prejudice before the doctrine can be invoked. Therefore, if plaintiff had actual notice of the new provision, the Secretary's failure to follow his own regulation should not bar application of section 206 to plaintiff. This is especially true since the purpose of 45 C.F.R. section 5.13 appears to be that of providing notice and not that of 5 U.S.C. section 553 which contemplates giving the public a chance to comment on a proposed regulation.

576, 584–85 (1964). Thus where retrospective application will result in manifest injustice to a party, a court should give a regulation prospective effect only. *Thorpe v. Housing Authority,* 393 U.S. 268, 281–82 & n. 43, 89 S.Ct. 518, 525–26, 21 L.Ed.2d 474, 483–84 (1969) (dictum). Defendants do not quarrel with the validity of these principles. Rather, they contend that retroactive application of section 206 is proper since that provision did not work a change in the pre-existing law, but instead served to further the principle underlying the Medicare Act and its regulations that expenditures by participating hospitals be closely tied to the provision of services to Medicare patients. They argue that at most section 206 was a clarification of an ambiguity in the regulations and that therefore retroactive application of the provision is permissible. In order to evaluate this contention, the court must examine the statutory and regulatory framework as it existed prior to the promulgation of section 206.

The Medicare Act provides for reimbursement of the "reasonable cost" of providing service to Medicare patients. 42 U.S.C. § 1395f(b). "Reasonable cost" is the cost actually incurred by the hospital and is to be determined in accordance with regulations issued by the Secretary or his delegate. 42 U.S.C. § 1395x(v)(1)(A). In 1966 the Secretary promulgated regulations dealing with the determination of reasonable cost. Of these regulations, two are most pertinent to the issue confronting the court. 20 C.F.R. § 405.419(a) provides that "[n]ecessary and proper interest on both current and capital indebtedness is an allowable cost." Section 405.419(b) defines interest as "the cost incurred for the use of borrowed funds." Although it goes on to separately define current and capital indebtedness, section 405.419 nowhere indicates that capital indebtedness should be treated differently from current indebtedness. Nor does section 405.419 or any other section of the regulations specifically set forth the method for calculating either current or capital indebtedness. Instead, one must look to the general provisions of 20

C.F.R. § 405.406(a) for guidance. That section provides:

> The principles of cost reimbursement will require that providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program. Standardized definitions, accounting, statistics, and reporting practices which are widely accepted in the hospital and related fields are followed. *Changes in these practices and systems will not be required in order to determine costs payable under the principles of reimbursement.*

(emphasis added).

Thus, as the court found in its order of June 5, 1975, under the regulations as they existed prior to the implementation of section 206 of the Provider Reimbursement Manual, so long as the expensing of interest costs during construction was a widely accepted practice in the hospital and related fields, a hospital which had theretofore utilized this method of accounting for its interest expenses could continue to do so. Order of June 5, 1975, at 10. The Medicare Provider Appeals Committee found that plaintiff had "presented substantial documentation for the theory that interest expense during construction may either be expensed or capitalized." Committee Decision at 2. Thus the promulgation of section 206 significantly changed the existing regulatory framework by eliminating one of two previously permissible accounting practices in dealing with interest costs incurred during construction.

Despite this significant change worked by the promulgation of section 206, defendants contend, and the Medicare Provider Appeals Committee found, that "there was much ambiguity, uncertainty and lack of direction as to the handling of such items as interest expense during construction in the hospital accounting field and that the only document truly extant for the periods in question was the American Hospital Association Chart of Accounts" which recommended that such interest costs be capitalized. *Id.* The Committee therefore concluded that

section 206 of the Manual was "interpretive only for purposes of clarifying" section 405.-419 of the regulations and that it therefore was to be applied retroactively. *Id.* at 3.[4]

While the Committee may have been correct in finding that there was much uncertainty in the hospital field concerning the best method of treating interest expense during construction, and while it may have been correct in concluding that many hospitals followed the advice of the American Hospital Association Chart of Accounts and capitalized such interest costs, these findings really go to the question of whether section 206 set forth a permissible and reasonable rule within the framework of the Medicare Act. They do not go to the question of whether the regulations, themselves, were ambiguous prior to the adoption of section 206. Thus, while section 206 of the Manual may "interpret" and "clarify" section 405.419 of the regulations which is silent on the question of the method of accounting to be employed in connection with interest costs during construction, it does more than "interpret" and "clarify" section 405.406. It overrules the unambiguous declaration that *any* widely accepted accounting practice may be used in calculating reimbursable costs and decrees that in calculating reimbursable interest costs during construction only *one* method of accounting may be used.

The court does not question the reasonableness of the Secretary or the Committee in finding that the requirement of section 206 that interest during construction be capitalized aids in implementing the principles underlying both the Medicare Act and its regulations. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965). However, because section 206 conditions the reimbursement of interest expenses during construction on compliance with the capitalization requirement where no such condition existed before, the court holds that section 206 may not be applied retroactively. *Greene v. United States, supra, Coe v. Secretary of Health, Education & Welfare,* 502 F.2d 1337 (4th Cir. 1974) (no retroactive application of Medicare regulations divesting previously compensable services of their compensable status); *Hazelwood Chronic & Convalescent Hospital, Inc. v. Weinberger,* 1974 CCH Medicare & Medicaid Guide ¶ 27,019 (D.Or.1974) (regulation providing for recoupment of certain reimbursements where participating hospital utilized accelerated depreciation and then terminated participation in the Medicare program may not be applied retroactively); *Johnson v. Finch,* 328 F.Supp. 1169 (E.D.La.1971) (no retroactive application of regulations defining and imposing evidentiary requirements on emergency situations permitting the use of non-participating hospitals).

4. The following constitute the findings of the Committee:

The Committee finds the provider has presented substantial documentation for the theory that interest expense during construction may either be expensed or capitalized under generally accepted accounting principles. The Committee further finds that during the periods in question there was much ambiguity, uncertainty and lack of direction as to the handling of such items as interest expense during construction in the hospital accounting field and that the only document truly extant for the periods in question was the American Hospital Association Chart of Accounts. Although this document has been shown not to be a document for the purpose of reimbursing institutions for cost incurred, it is a widely accepted document purporting to be a standard or guideline for the accumulating of costs and the financial management of hospitals. The Committee notes that this document, in light of the silence of the original regulations and manuals concerning the allowability of interest expense during construction, was utilized by many hospitals in the establishment of procedures for the costing of their services. The Committee further observes that the Bureau of Health Insurance, in order to clarify the handling of interest expense during construction, published HIM–15, Section 206 in November 1968. This section clearly interprets Section 405.-419 of the Regulations to require interest expense during construction to be capitalized. The Committee concludes that although it is repugnant to its sense of equity and fairness to apply any rule retroactively, Manual Section 206 of HIM–15 is interpretive only for purposes of clarifying the Regulations and must be applied to all periods under the Medicare Program. Therefore, the Committee upholds the Plan's decision.

This leaves the question of whether application of section 206 was retroactive with respect to all three years in question. The Medicare Provider Reimbursement Manual containing section 206 was promulgated in November, 1968, and made available to participating hospitals in January, 1969. Plaintiff's claims for reimbursement for the years 1966 and 1967 were submitted in August, 1968. Therefore any application of section 206 to the claims for those years would unquestionably be retroactive. However, plaintiff's claim for reimbursement for 1968 was not submitted until December, 1969, one year after the promulgation of section 206. Thus while the right to reimbursement matured prior to the promulgation and distribution of section 206, the claim was not asserted until after section 206 was in effect. Although the Court in *Greene v. United States, supra,* emphasized that plaintiff's claim not only had matured but had also been asserted prior to the change in regulations, the court nevertheless concludes that application of section 206 to the 1968 claim would result in manifest injustice to plaintiff because plaintiff had no notice of the new regulation until it was too late for it to take remedial action. There is no question but that plaintiff *paid* the interest expenses before section 206 was promulgated and that it accounted for this payment as an item of expense. Had plaintiff known that these interest expenses were to be capitalized, it would have adjusted its patient revenues and would have borrowed additional funds to take account of this factor. Testimony of George Forsyth, Comptroller of Saint Francis Hospital, Tr. at 75–76. Thus the fact that the claim was not asserted until after the promulgation of section 206 should be considered irrelevant since the retroactive effect of the provision remains the same.

IT IS THEREFORE ORDERED that defendants' motion to alter the judgment is denied.