Elaine S. STICKELMAN, Appellant,

v.

UNITED STATES of America et al., Appellees.

No. 75–3476.

United States Court of Appeals, Ninth Circuit.

Oct. 21, 1977.

Daniel R. Walsh, Carson City, Nev., for appellant.

Lawrence J. Semenza, U. S. Atty., Las Vegas, Nev., Lands and Natural Resources Div., Peter R. Taft, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellees.

Before HUFSTEDLER, GOODWIN and ANDERSON, Circuit Judges.

GOODWIN, Circuit Judge:

This is an appeal by a land claimant from a summary judgment for the government.

Elaine S. Stickelman applied for 320 acres in Nevada under the Desert Land Act, 43 U.S.C. § 321, *et seq.* According to the terms of her entry, she had until February 18, 1970, to make final proof that the land had been reclaimed and cultivated as the Act required.

After expending an alleged $18,000 on parts of the 320 acres, Stickelman was unable to "prove up" her entry. Claiming "unavoidable delay in the construction of irrigation works", she applied for and was granted a two-year extension under 43 U.S.C. § 333.

Ill health and financial reverses again caused Stickelman to fail to "prove up", and she requested a second extension, under 43 U.S.C. § 334.[1] The Bureau of Land Man-

---

1. 43 U.S.C. § 334.

"The Secretary of the Interior may, in his discretion, in addition to the extension authorized by section 333 of this title or other law existing prior to April 30, 1912, grant to any entryman under the desert-land laws a further extension of the time within which he is required to make final proof: *Provided,* That such entryman shall, by his corroborated affidavit filed in the land office of the district where such land is located, show to the satisfaction of the Secretary that because of unavoidable delay in the construction of irrigation works intended to convey water to the land embraced in his entry he is, without fault on his part, unable to make proof of the reclama-

agement (BLM) denied this second request. Stickelman appealed to the Interior Board of Land Appeals (IBLA), which, without a hearing, upheld the BLM's decision.

Stickelman filed in the district court a petition to review the agency's decision.[2] In granting the government's motion for summary judgment, the court held: (1) that it did not have jurisdiction to review the denial of an extension sought under 43 U.S.C. § 334; (2) that if the district court did have jurisdiction the plaintiff was entitled to no relief.

Under the Administrative Procedure Act, courts have no jurisdiction to review administrative actions which by law are committed to agency discretion. 5 U.S.C. § 701(a)(2). This proposition, however, is not as easily applied as those who seek to predict the course of adjudication might wish. See Arizona Power Authority v. Morton, 549 F.2d 1231 (9th Cir. 1977), petition for cert. filed, 46 U.S.L.W. 3001 (U.S., June 24, 1977).

The first question in this case is whether the district court was correct in holding that 43 U.S.C. § 334 commits the agency decision to agency discretion.

Judicial review is said to be barred because of agency discretion when the statute is " 'drawn in such broad terms that in a given case there is no law to apply.' S.Rep. No.752, 79th Cong., 1st Sess. 26 (1945)." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1970); Arizona Power Authority v. Morton, supra; Ness Investment Corp. v. United States Department of Agriculture, Forest Service, 512 F.2d 706 (9th Cir. 1975). Yet, over the years, the courts have evolved a concern for citizens pressing applications upstream against a distant bureaucracy. Courts now review many agency activities that Congress probably did not

initially consider reviewable, if indeed it considered the question of judicial review at all. See, e. g., Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966); Stuckey v. Weinberger, 488 F.2d 904 (9th Cir. 1973). The question here is whether § 334 is another statute which now permits judicial review. The statute must be construed in the light of its legislative history and of related statutes passed at about the same time.

Early in this century, Congress adopted a number of statutes to grant extensions of time to Desert Land Act entrypersons who were having trouble getting water onto their land because of delays in completing irrigation projects. The first such law was 43 U.S.C. § 333, in which the language apparently creates a right to an extension if the individual meets the statutory criteria. The Secretary's only obvious discretion under § 333 applies to the length of the extension to be granted. When § 333 failed to provide adequate relief in all cases, Congress adopted special acts granting certain local groups additional time. These statutes used language that seemed to make the extension a matter of the Secretary's discretion, even though Congress intended extensions to be nearly automatic (except for fraud).

The Act of February 28, 1911, 36 Stat. 960, allowed the Secretary "in his discretion" to grant a further extension to entrypersons in several eastern Washington counties. This law was later described as "granting a further extension" to the beneficiaries. Cong. Rec., 62d Cong., 2d Sess., March 21, 1912, at 3747. The Interior Department apparently interpreted these early statutes as conferring upon the Secretary the same degree of discretion. Letter of Samuel Adams to Congressman Taylor, March 4, 1912, id.

To provide a general solution and avoid the necessity of additional local statutes,

---

tion and cultivation of said lands as required by law within the time limited therefor; * * * ."

**2.** The long debate over the jurisdictional basis for review of agency action has ended. The Supreme Court held in Califano v. Sanders, 430 U.S. 99, 104–107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), that § 10 of the Administrative Proce-

dure Act, 5 U.S.C. §§ 701–704, is not a grant of jurisdiction. However, it found that a 1976 amendment to 28 U.S.C. § 1331, 90 Stat. 2721, is a jurisdictional grant except to the extent that some specific statute precludes review. There is no such statute here, so the district court had jurisdiction of the case.

§ 334 was enacted. Congressman Taylor, the bill's drafter and sponsor, described it on the floor as almost identical to § 333 and as granting an extension to all who could make the proper showing. Cong. Record, 62d Cong., 2d Sess., March 21, 1912, at 3747. On the other hand, Congressman Taylor on the floor, and the Committee on the Public Lands in its report on the bill, referred to the granting of the extension as being "left entirely within the discretion of the Secretary" in order to prevent fraud and imposition on the government. Cong. Record, 62d Cong., 2d Sess., March 21, 1912, at 3748; H.Rep.No.394, 62d Cong., 2d Sess., to accompany H.R. 20491.

Congress, when it adopted § 334, thus had before it an ambiguous statement of the Secretary's powers under the new law. On the one hand, the law supposedly was intended to grant an extension to all who qualified, and it supposedly followed a previous statute that narrowly confined the Secretary's discretion. On the other hand, the provision for unlimited discretion was represented to Congress as necessary to prevent fraud. Under the first interpretation the Secretary's action would be reviewable, while under the second it probably would not.

We have to resolve this ambiguity by applying current concepts of administrative law to an act passed when these concepts were in their infancy, and to a statute which, understandably, was not written with current standards in mind. Accordingly, we look at both the statutory language and the avowed congressional purpose in the light of modern administrative law. This statute was designed to protect what Congressman Taylor called the "rights" of entrymen, "to allow to all desert-land entrymen an additional three years' extension * * *, where it is shown to be necessary * * *." Cong. Rec. at 3747. This statement shows that Congress

intended to give entrypersons rights under this statute—rights which today would be subject to review under 5 U.S.C. § 702 and 28 U.S.C. § 1331.[3]

■ The specific rights emerge from the statutory language. If the entryperson meets the criteria of the first proviso of § 334, he or she is entitled to the Secretary's exercise of discretion on the claim for an extension. There are thus two stages in an extension decision; the first stage requires a finding of fact, and the second stage involves an exercise of discretion. The finding of fact is reviewable under the general principles of 5 U.S.C. § 701(a) because no statute precludes judicial review. Further, there is no indication that the finding is committed to agency discretion. While the Secretary's discretion is undoubtedly great, the legislative history provides guidelines for its exercise,[4] and thus we cannot say that it is entirely beyond judicial review. The district court erred in holding that it was without jurisdiction to review the denial of Stickelman's application.

The next question involves the definition of the rights Stickelman had to participate in the two-step decision-making process. The statute itself gives her none, and accordingly the provisions of 5 U.S.C. § 554 do not apply. To have rights she must find the deprivation of a property interest under the reasoning of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and its progeny. It is possible to have a property interest in a potential benefit, but the person, *Roth* emphasizes, " * * clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709. If Stickelman can show that she meets the requirements of the first proviso to § 334, she has a "legitimate claim of entitlement" to the Secretary's exercise of

---

**3.** See note 2, *supra*.

**4.** To summarize, the purpose of the discretion was to prevent fraud on the government. In addition, Congress did not intend to give extensions to entrypersons who had no chance of

making final proof within the extension period. Within these limits, Congress apparently expected most qualified applicants to receive extensions.

his discretion in her case and to have that discretion exercised within the broad framework of Congress's purpose. This was sufficient to give her some rights in the process.

That Stickelman had some rights to participate does not mean that she had a right to a full evidentiary hearing. The current trend of decisions rejects the automatic grant of such a hearing in the absence of statute. Instead, the cases look to procedures that will provide fairness to the individual without unduly restricting governmental action. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); H. Friendly, " 'Some Kind of Hearing,' " 123 U.Penn.L.Rev. 1267 (1975); K. Davis, Administrative Law of the Seventies, ch. 7, §§ 7.00–1–1 to –1–2 (Supp.1977).

Under § 334 the applicant must make the necessary showing "by his corroborated affidavit." The applicant submits the affidavit to a local BLM office, and the BLM may have its own field investigator submit additional reports. A local BLM agent makes the initial decision whether to grant or deny an extension. Present regulations provide the applicant no procedure in which to rebut or explain the field agent's reports and recommendation upon which the deciding officer frequently relies. Presentation of the applicant's side of the controversy thus tends to be neglected if the decision-maker hears only from the agent who brings in the unfavorable report. These procedures do not satisfy an entryperson's due-process rights.

■ As a minimum, entrypersons should be given an opportunity to read and reply in writing to any adverse field reports. Moreover, the entryperson must have the opportunity to confront the authors, and also the opportunity to present contrary evidence. For the administrative appeal to the IBLA to be effective, the deciding officer must specifically find whether the entryperson meets the requirements of the first proviso in § 334. If the

entryperson satisfies the first priviso, and the deciding officer refuses to grant an extension, the officer must explain the reason for this discretionary decision.

■ If the entryperson appeals to the IBLA there must be an opportunity to rebut the deciding officer's findings, to respond to the reasons for the discretionary decision, and to answer any other new material. The IBLA has discretionary authority to grant or deny an evidentiary hearing. 43 C.F.R. § 4.415 (1976). It should grant a hearing when there are significant factual or legal issues remaining to be decided and the record without a hearing would be insufficient for resolving them. The IBLA should also find whether the entryperson meets the requirements of the proviso and explain its discretionary decision if it refuses the extension. These findings and explanations are necessary for adequate judicial review.

■ Judicial review is limited to ensuring compliance with these basic procedural requirements and evaluating the department's action by the standards of 5 U.S.C. § 706(2). Since there is no statutory requirement for a hearing, the substantial evidence test is inapplicable. Factual review is limited, therefore, by the "arbitrary and capricious" rule 5 U.S.C. § 706(2)(A). The Secretary's discretion at the second step is broad and is reviewable only for abuse. These are extremely narrow grounds for review, and we would expect few challenges to succeed.

We do not know whether Stickelman's challenge to a procedurally regular denial would succeed. Because she apparently did not receive at least some of the procedural protections we have held to be required, we must remand the case to the district court for further proceedings. The district court should determine what rights Stickelman was denied and then return the case to the Secretary with specific instructions on how to proceed to rectify the previous errors.

We express no opinion on the merits of Stickelman's claims. We do not know whether her factual allegations will be

418

proved. We do not decide whether, if proved, they would meet the requirements of the first proviso of § 334, nor do we decide whether, assuming they do meet those requirements, the Secretary would be justified in exercising his discretion to refuse the extension. We simply send the case back so that the district court and the department can begin to address the issues we have found to be relevant.

Vacated and remanded.