**Mildred R. TAYLOR, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. C–83–2047–WWS.**

United States District Court, N.D. California.

Dec. 14, 1983.

---

A. Keith Lesar, Aptos, Cal., for plaintiff.

John F. Barg, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

This is an appeal from a final decision of the Secretary of Health and Human Services denying plaintiff Mildred Taylor disability benefits. 42 U.S.C. § 405(g) The case is before the Court on cross-motions for summary judgment.

Plaintiff filed an application for disability benefits on August 6, 1976, alleging that she had become disabled on May 30, 1974 due to a concussion and strain of the head and neck and a lower spine injury caused by an industrial accident. That claim was denied and notice of the denial was sent to plaintiff on December 16, 1976. Plaintiff did not appeal that denial.

Plaintiff filed the present application on May 8, 1981, alleging disability because of severe back pain. Plaintiff alleged the same causes of injury and date of onset of the disability as in her prior application. In connection with the present application plaintiff requested that her earlier application of August 1976 be reopened. 20 C.F.R. §§ 404.957, 404.958. Plaintiff's application was denied initially and upon reconsideration by the Secretary. Upon plaintiff's petition, a hearing was conducted before an administrative law judge (ALJ). The ALJ found that good cause existed to reopen the previous application and found that plaintiff was disabled since May 30, 1974.

The Appeals Council reviewed the ALJ's decision on its own motion, 20 C.F.R.

§§ 404.969, 404.970(a)(3), and found that there was no basis to reopen the previous application and that plaintiff was not under a disability at any time through the date of the decision entitling her to disability insurance benefits. This appeal followed.

Plaintiff raises a number of issues on appeal.

■ First, she claims that the Appeals Council's initiation of review was improper and thus its decision should be set aside. The Appeals Council reviewed the ALJ's decision pursuant to 20 C.F.R. § 404.969 which provides that the Council may decide to review a decision on its own motion within 60 days after the date of the hearing or dismissal below. The Council notified plaintiff that, in deciding to review her case, it was applying § 404.970(a)(3) which provides that the "Appeals Council will review a case if … the action, findings or conclusions of the administrative law judge are not supported by substantial evidence."

Plaintiff argues that the ALJ's decision was supported by substantial evidence and that the Council therefore had no authority to review and reverse it. Plaintiff would have this Court review the ALJ's decision and reinstate it as the final decision of the Secretary so long as it is supported by substantial evidence.

There is no authority within the Ninth Circuit and scant authority elsewhere for such a review by the district court. *See Wood v. Schweiker*, 537 F.Supp. 660, 667 (D.S.C.1982); *Bohr v. Schweiker*, 565 F.Supp. 610 (E.D.Pa.1983). In *Bohr, supra*, the court noted that courts are not precluded from inquiring into the propriety of review by the Appeals Council and that administrative agencies are bound by their own regulations. The court there failed to resolve the issue, however, and instead stated that "decisions of … the Appeals Council which deny benefits are, nevertheless, always entitled to deference and must be affirmed so long as they are supported by substantial evidence." *Id.* at 612. The limited scope of judicial review under 42 U.S.C. § 405(b) requires this Court to affirm the Appeals Council's decision, as the final decision of the Secretary, if it is supported by substantial evidence.

Plaintiff argues that § 404.970(a)(3) allows the Appeals Council to initiate review only when it can be determined conclusively that the ALJ's decision was unsupported by substantial evidence. That section states that the Appeals Council *will* review a case (upon its own motion or upon petition by a claimant) under certain specified circumstances. Section 404.969 provides, however, that the Appeals Council *may decide* to review an action on its own motion. As noted by the court in *Baker v. Heckler*, 569 F.Supp. 749, 753 (W.D.Ark. 1983), "20 C.F.R. § 404.969 does not limit Appeals Council review to those situations enumerated in 20 C.F.R. § 404.970, nor does the latter section purport to be an exhaustive list of every circumstance in which Appeals Council 'own motion' review would be appropriate…. A contrary holding would unduly interfere with the Secretary's authority to monitor the output of her department, and with her ability to determine when a final administrative decision has been reached." This construction is further supported by 42 U.S.C. § 405(b) which provides that "the Secretary is … authorized, on [her] own motion, to hold such hearings and to conduct such investigations and other proceedings as [she] may deem necessary and proper for the administration of [federal old-age, survivors, and disability insurance programs]." *Id.* at 752–753. Consequently, this Court will not review the propriety of the Appeals Council's decision to review the ALJ's decision, but will restrict itself to determining whether the Appeals Council's contrary finding that plaintiff was not disabled is supported by substantial evidence.

■ Next, plaintiff argues that the Appeals Council's decision not to reopen plaintiff's previous claim is not supported by substantial evidence. However, the district court does not have subject matter jurisdiction to review a decision of the Secretary not to reopen a prior decision. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Davis v. Schweiker*,

665 F.2d 934 (9th Cir.1982). In *Califano v. Sanders,* the Supreme Court stated that § 405(g) authorizes judicial review only of a "final decision of the Secretary made after a hearing." It held that the opportunity to reopen final decisions, and any hearing convened to determine the propriety of such action, are afforded by the Secretary's regulations and not by the Social Security Act. *Id.* 430 U.S. at 108, 97 S.Ct. at 985. Once a decision becomes administratively final, the Secretary's decision to reopen the claim and to hold a hearing is purely discretionary. Thus, the Secretary's decision not to reopen a claim is not a "final" decision within the meaning of § 405(g). *Id.; Davis, supra,* 665 F.2d at 935. The Court further reasoned that allowing judicial review of a decision not to reopen a claim for benefits would frustrate the congressional purpose behind limiting the period to obtain judicial review to 60 days after the Secretary's final decision, which was intended to forestall repetitive and belated litigation of stale eligibility claims. *Sanders, supra,* 430 U.S. at 108, 97 S.Ct. at 985.

■ Plaintiff argues that *Sanders* should not bar jurisdiction in this case because the ALJ granted plaintiff's request to reopen the prior claim and then revised its decision on that claim in her favor. While this situation is different from that in *Sanders* and *Davis,* where the appeals were taken from determinations of the ALJ not to reopen a prior claim, the reasoning of *Sanders* still applies. The fact that here the ALJ's decision to reopen was incorporated into the final determination that plaintiff was disabled and entitled to benefits does not negate the fact that the ALJ nonetheless made a separable decision to reopen. The Appeals Council's reversal then became the Secretary's final decision on that issue which, under *Sanders,* cannot be reviewed by the district court.

Further, the fact that the ALJ held a hearing during which plaintiff could argue on behalf of her petition to reopen does not bring the matter within § 405(g), contrary to the holding of *Sanders.* The thrust of that decision was that, because the entire procedure of reopening, with or without a hearing, was discretionary, the decision of the Secretary was not "final" within the meaning of the statute. If the Court could find that a decision not to reopen which was made *without* a hearing would be immune from court review, then certainly such a decision made by the Appeals Council on the basis of additional evidence and testimony before the ALJ would also be unreviewable.

Finally, plaintiff argues that even if her 1976 claim is not reopened, there is no res judicata bar that prevents her from showing that she was disabled prior to that date for the purpose of supporting her new application for benefits commencing after 1976.

■ The final decision of the Secretary on December 16, 1976, established that plaintiff was not disabled as of that date. That decision is entitled to res judicata effect. *Lyle v. Secretary of Health and Human Services,* 700 F.2d 566, 568 (9th Cir.1983); *Stuckey v. Weinberger,* 488 F.2d 904, 909–911 (9th Cir.1973) [res judicata applies to findings and decisions on the merits which become final as a result of a claimant's failure to seek review after notice of an adverse decision].

According to the court in *Lyle, supra,* the effect of this prior determination is not only to preclude benefits for disability prior to 1976, as plaintiff argues, but to create a presumption that plaintiff continued to be not disabled and capable of engaging in her prior work after that date. *Lyle, supra,* 700 F.2d at 568. The burden is on the plaintiff to overcome this presumption by providing evidence that conditions have changed since that date. *Id.*

Thus, once the Appeals Council determined not to reopen plaintiff's prior claim, the question before it was whether there was substantial evidence to show that plaintiff's condition had changed since December 1976, to rebut the presumption of non-disability which arose from the res judicata effect of the prior denial of benefits. The Appeals Council did not precisely address this question in its opinion. How-

ever, it did find that "[n]either the evidence considered [in 1976] nor the evidence obtained and considered in connection with the current application is demonstrative of [a disabling impairment] ... on or after May 30, 1974." (C.T. 13)

Additionally, the ALJ and Appeals Council found that plaintiff ceased to meet the special earnings requirements of the Social Security Act after September 30, 1978.

■ Thus, the question before this Court and the scope of its review is necessarily very limited; that is, whether the Appeals Council's decision that plaintiff was not disabled for a 12-month period between December 16, 1976 and September 30, 1978 was supported by substantial evidence.

Plaintiff's medical records as of December 16, 1976, included diagnoses of back pain, depression, hysteria, and "situational reaction in an emotionally unstable or poorly defended patient." Recurrent muscle spasms and diffuse areas of tenderness were found upon examination, but neurological, reflex and sensory examinations and x-rays revealed no abnormalities. Examining physicians and psychiatrists noted that plaintiff's pain was related to, and exacerbated by, tension, activity, and her emotional problems. Dr. Scibetta in 1975 noted that there was no objective evidence of disability but due to her pain plaintiff was partially permanently disabled from her usual occupation and that her condition would preclude heavy lifting and frequent bending and stooping. On the basis of this evidence the Secretary found in 1976 that plaintiff did not have a medically determinable impairment of sufficient severity to preclude substantial gainful activity.

The new evidence submitted to the Secretary showing plaintiff's condition between December 1976 and September 1978 consisted of the following:

(1) The testimony of the plaintiff and her husband at the hearing before the ALJ described plaintiff as suffering from severe pain and extreme limitations on mobility and activity. Plaintiff's husband testified that these conditions and limitations have

existed since 1974. Plaintiff's pastor, Reverend Authelet, testified that plaintiff was in great pain and emotional distress when he met her in 1976, that currently her pain makes her attendance at meetings "still somewhat impaired," but that she has exhibited increasing emotional strength since 1976.

(2) Kathlyn Spencer of the El Camino Hospital Pain Committee reported on December 26, 1978, that plaintiff was participating in the Pain Program and had shown indications of progress, including more relaxation, coping with pain, and having more control over her physical symptoms. Prognosis was good if plaintiff continued with the program.

(3) Dr. McBratney, plaintiff's treating physician since 1977, noted in February 1977 that plaintiff was experiencing chronic anxiety. In November 1977 he noted back pain with radiation to the neck, head and shoulder, occasional right leg numbness, and full range of motion in her cervical and lumbar spine but 25 percent decrease in side bending. No neurological deficits were found. On September 26, 1978, plaintiff reported less pain. She still had discomfort sitting but her range of motion was 85 percent improved. On September 29, 1978, plaintiff reported a pinched right hip. She was capable of slightly increased range of motion and free of severe pain. Entries for the rest of 1978 indicate improvement in plaintiff's range of motion and degree of pain.

In 1981 Dr. McBratney summarized plaintiff's condition by stating that she had chronic complaints of back pain from 1974, that her physical findings have been variable, and that she has not shown any specific neurological defect or any objective evidence of any deficits in her lumbar spine. He noted that she had been under chronic psychiatric care and has exacerbation of pain when stresses in her life have increased.

In 1982, Dr. McBratney opined that the combination of plaintiff's low back pain and her poor reaction to stress have precluded her from working at least since 1977. He

noted that her pain problem could not successfully be controlled with medication, and that she would become dysfunctional if she were to attempt to return to work.

(4) David O. Torres, Ph.D., a clinical psychologist who started treating plaintiff in 1980, described a similar pain-stress syndrome in his report of 1982, stating that her pain, when exacerbated, created depression and anxiety. He said that her periods of anxiety and depression were well-controlled by psychotherapy and medication, but that any return to gainful employment would render her psychiatrically disabled within a short period of time.

Viewing this evidence in light of the entire record, the Court concludes that there is substantial evidence to support the Appeals Council's implied finding that plaintiff's condition had not changed significantly since December 1976. This conclusion is based on two grounds.

First, the medical and psychological reports from the relevant two year period describe symptoms and observations substantially similar to those reported prior to December 1976. The post-1976 reports of back pain, back spasms, tension, and depression reflect no change in the nature or severity of plaintiff's symptoms. The interaction between plaintiff's pain and her inability to handle stress, identified by Drs. McBratney and Torres as the cause of plaintiff's disability, had already been noted prior to 1976.

Dr. McBratney's and Dr. Torres' opinions[1] that plaintiff has been unable to work because of her pain and that she would become dysfunctional if her level of activity increased may be interpreted as a deterioration in plaintiff's condition when compared with Dr. Scibetta's opinion in 1975 noted above, that plaintiff was only "partially permanently disabled from her usual occupation." However, the factual and diagnostic factors underlying McBratney's and Torres' opinions do not differ from those observed since 1974. Although a treating physician's opinion is generally

entitled to great weight, the weight to be given conclusory statements depends upon the extent to which they are supported by medical findings and other evidence. 20 C.F.R. § 404.1527; *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir.1981). Since the records show that between 1976 and 1978 plaintiff was experiencing the same symptoms, and for the same reasons, as existed prior to 1976, the Appeals Council could reasonably conclude that those records and observations do not reflect a change in plaintiff's condition.

Furthermore, the testimony of plaintiff, her husband, and her pastor indicate that plaintiff experienced the same pain and limitations in activity between 1974 and 1976 as she did in the subsequent two years.

Second, Dr. McBratney's medical records, Kathlyn Spencer's reports, and Reverend Authelet's testimony reflect improvements in plaintiff's condition between 1976 and 1978. To be entitled to benefits, plaintiff must establish that she was disabled for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A) Even if plaintiff experienced short periods of severe impairment to the point of disability between December 1976 and September 1978, the fluctuations reflected in her record support the Appeals Council's conclusion that she was not disabled within the meaning of the statute.

Plaintiff's burden on this appeal was great, given the presumption of non-disability which arose from the res judicata effect of the Secretary's denial of benefits in 1976. The evidence before the Secretary was sufficient to support a finding that plaintiff's condition did not change between December 16, 1976 and September 30, 1978. For this reason, and for the reasons stated above, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

IT IS SO ORDERED.

1. Since Dr. Torres did not see plaintiff until 1980, his opinions are of speculative value with respect to plaintiff's condition between 1976 and 1978.